# ESTATE OF COWART *v.* NICKLOS DRILLING CO.
## ET AL.

No. 91–17.   Argued March 25, 1992—Decided June 22, 1992

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, SCALIA, SOUTER, and THOMAS, JJ., joined. BLACKMUN, J., filed a dissenting opinion, in which STEVENS and O'CONNOR, JJ., joined, *post*, p. 484.

*Lloyd N. Frischhertz* argued the cause and filed briefs for petitioner.

*Michael R. Dreeben* argued the cause for the federal respondent. With him on the brief were *Solicitor General Starr, Deputy Solicitor General Mahoney, Steven J. Mandel,* and *Edward D. Sieger. H. Lee Lewis, Jr.,* argued the cause and filed a brief for the private respondents.*

JUSTICE KENNEDY delivered the opinion of the Court.

The Longshore and Harbor Workers' Compensation Act (LHWCA or Act), 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.,* creates a comprehensive federal scheme to compen-

---

*\*Thomas D. Wilcox* and *Franklin W. Losey* filed a brief for the National Association of Stevedores et al. as *amici curiae* urging affirmance.

*Vance E. Ellefson* and *C. Theodore Alpaugh III* filed a brief for Petroleum Helicopters, Inc., et al. as *amici curiae.*

sate workers injured or killed while employed upon the navigable waters of the United States. The Act allows injured workers, without forgoing compensation under the Act, to pursue claims against third parties for their injuries. But §33(g) of the LHWCA, 33 U. S. C. §933(g), provides that under certain circumstances if a third-party claim is settled without the written approval of the worker's employer, all future benefits including medical benefits are forfeited. The question we must decide today is whether the forfeiture provision applies to a worker whose employer, at the time the worker settles with a third party, is neither paying compensation to the worker nor yet subject to an order to pay under the Act.

I

The injured worker in this case was Floyd Cowart, and his estate is now the petitioner. Cowart suffered an injury to his hand on July 20, 1983, while working on an oil drilling platform owned by Transco Exploration Company (Transco). The platform was located on the Outer Continental Shelf, an area subject to the Act. 43 U. S. C. §1333(b). Cowart was an employee of the Nicklos Drilling Company (Nicklos), who along with its insurer Compass Insurance Co. (Compass) are respondents before us. Nicklos and Compass paid Cowart temporary disability payments for 10 months following his injury. At that point Cowart's treating physician released him to return to work, though he found Cowart had a 40% permanent partial disability. App. 75. The Department of Labor notified Compass that Cowart was owed permanent disability payments in the total amount of $35,592.77, plus penalties and interest. This was an informal notice which did not constitute an award. No payments were made.

Cowart, meanwhile, had filed an action against Transco alleging that Transco's negligence caused his injury. On July 1, 1985, Cowart settled the action for $45,000, of which he received $29,350.60 after attorney's fees and expenses. Nicklos funded the entire settlement under an indemnifica-

tion agreement with Transco, and it had prior notice of the settlement amount. But Cowart made a mistake: He did not secure from Nicklos a formal, prior, written approval of the Transco settlement.

After settling, Cowart filed an administrative claim with the Department of Labor seeking disability payments from Nicklos. Nicklos denied liability on the grounds that under the terms of § 33(g)(2) of the LHWCA, Cowart had forfeited his benefits by failing to secure approval from Nicklos and Compass of his settlement with Transco, in the manner required by § 33(g)(1).

Section 33(g) provides in pertinent part:

"(g) Compromise obtained by person entitled to compensation

"(1) If the person entitled to compensation (or the person's representative) enters into a settlement with a third person referred to in subsection (a) of this section for an amount less than the compensation to which the person (or the person's representative) would be entitled under this chapter, the employer shall be liable for compensation as determined under subsection (f) of this section only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation (or the person's representative). The approval shall be made on a form provided by the Secretary and shall be filed in the office of the deputy commissioner within thirty days after the settlement is entered into.

"(2) If no written approval of the settlement is obtained and filed as required by paragraph (1), or if the employee fails to notify the employer of any settlement obtained from or judgment rendered against a third person, all rights to compensation and medical benefits under this chapter shall be terminated, regardless of whether the employer or the employer's insurer has

made payments or acknowledged entitlement to benefits under this chapter." 33 U. S. C. § 933(g).

The Administrative Law Judge (ALJ) rejected Nicklos' argument on the basis of prior interpretations of § 33(g) by the Benefits Review Board (Board or BRB). In the first of those decisions, *O'Leary* v. *Southeast Stevedoring Co.*, 7 BRBS 144 (1977), aff'd mem., 622 F. 2d 595 (CA9 1980), the Board held that in an earlier version of § 33(g) the words "person entitled to compensation" referred only to injured employees whose employers were making compensation payments, whether voluntary or pursuant to an award. The *O'Leary* decision held that a person not yet receiving benefits was not a "person entitled to compensation," even though the person had a valid claim for benefits.

The statute was amended to its present form, the form we have quoted, in 1984. In that year Congress redesignated then subsection (g) to what is now (g)(1) and modified its language somewhat, but did not change the phrase "person entitled to compensation." Congress also added the current subsection (g)(2), as well as other provisions. Following the 1984 amendments the Board decided *Dorsey* v. *Cooper Stevedoring Co.*, 18 BRBS 25 (1986), app. dism'd, 826 F. 2d 1011 (CA11 1987). The Board reaffirmed its interpretation in *O'Leary* of the phrase "person entitled to compensation," saying that because the 1984 amendments had not changed the specific language, Congress was presumed to have adopted the Board's previous interpretation. It noted that nothing in the 1984 legislative history disclosed an intent to overrule the Board's interpretations. The Board decided that the forfeiture provisions of subsection (g)(2), including the final phrase providing that forfeiture occurs "regardless of whether the employer . . . has made payments or acknowledged entitlement to benefits," was a "separate provisio[n] applicable to separate situations." 18 BRBS, at 29.

The ALJ in this case held that under the reasoning of *O'Leary* and *Dorsey*, Cowart was not a person entitled to

compensation because he was not receiving payments at the time of the Transco settlement. Thus, the written-approval provision did not apply and Cowart was entitled to benefits. Cowart's total disability award was for $35,592.77, less Cowart's net recovery from Transco of $29,350.60, for a net award of $6,242.17. In addition, Cowart was awarded interest, attorney's fees, and future medical benefits, the last constituting, we think, a matter of great potential consequence. The Board affirmed in reliance on *Dorsey.* 23 BRBS 42 (1989) *(per curiam).*

On review, a panel of the Court of Appeals for the Fifth Circuit reversed. 907 F. 2d 1552 (1990). Without addressing the Board's specific statutory interpretation, it held that §33(g) contains no exceptions to its written-approval requirement. Because this holding, and a decision by a panel in a different case, *Petroleum Helicopters, Inc.* v. *Barger,* 910 F. 2d 276 (CA5 1990), conflicted with a previous unpublished decision in the same Circuit, *Kahny* v. *O. W. C. P.,* 729 F. 2d 777 (CA5 1984), the Court of Appeals granted rehearing en banc. The Director of the Office of Workers' Compensation Programs (OWCP), a part of the Department of Labor, 20 CFR §701.201 (1991), appeared as a respondent before the full Court of Appeals to defend the interpretation and decision of the Board.

In a *per curiam* opinion, the en banc Court of Appeals confirmed the panel's decision reversing the BRB in its *Cowart* case. 927 F. 2d 828 (CA5 1991). The Court of Appeals' majority held that §33(g) is unambiguous in providing for forfeiture whenever an LHWCA claimant fails to get written approval from his employer of a third-party settlement. The majority acknowledged the well-established principle requiring judicial deference to reasonable interpretations by an agency of the statute it administers, but concluded that the plain language of §33(g) leaves no room for interpretation. Judge Politz, joined by Judges King and Johnson, dissented on the ground that the OWCP's was a reasonable

agency interpretation of the phrase "person entitled to compensation," to which the Court of Appeals should have deferred.

We granted certiorari because of the large number of LHWCA claimants who might be affected by the Court of Appeals' decision. 502 U. S. 1003 (1991). We now affirm.

## II

In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished. *Demarest* v. *Manspeaker*, 498 U. S. 184, 190 (1991). The question is whether Cowart, at the time of the Transco settlement, was a "person entitled to compensation" under the terms of § 33(g)(1) of the LHWCA. Cowart concedes that he did not comply with the written-approval requirements of the statute, while Nicklos and Compass do not claim that they lacked notice of the Transco settlement. By the terms of § 33(g)(2), Cowart would have forfeited his LHWCA benefits if, and only if, he was subject to the written-approval provisions of § 33(g)(1). Cowart claims that he is not subject to the approval requirement because in his view the phrase "person entitled to compensation," as long interpreted by both the BRB and the OWCP, limits the reach of § 33(g)(1) to injured workers who are either already receiving compensation payments from their employer, or in whose favor an award of compensation has been entered. Nicklos and Compass, supported by the United States, defend the holding of the Court of Appeals that § 33(g) cannot support that reading. We agree with these respondents and hold that under the plain language of § 33(g), Cowart forfeited his right to further LHWCA benefits by failing to obtain the written approval of Nicklos and Compass prior to settling with Transco.

The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written. The principle can at times come into some tension with another fundamental principle of our law, one requiring judicial deference to a reasonable statutory interpretation by an administering agency. *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984); *National Railroad Passenger Corporation* v. *Boston & Maine Corp.*, 503 U. S. 407, 417 (1992). Of course, a reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms. *K mart Corp.* v. *Cartier, Inc.*, 486 U. S. 281, 291 (1988); *Chevron, supra*, at 842–843. In any event, we need not resolve any tension of that sort here, because the Director of the OWCP and the Department of Labor have altered their position regarding the best interpretation of § 33(g). The Director appears as a respondent before us, arguing in favor of the Court of Appeals' statutory interpretation, and contrary to his previous position. See Brief for Federal Respondent 8, n. 6. If the Director asked us to defer to his *new* statutory interpretation, this case might present a difficult question regarding whether and under what circumstances deference is due to an interpretation formulated during litigation. See *Bowen* v. *Georgetown Univ. Hospital*, 488 U. S. 204, 212–213 (1988); *Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U. S. 144, 158 (1991). The agency does not ask this, however. Instead, the federal respondent argues that the Court of Appeals was correct in saying the language of § 33(g) is plain and cannot support the interpretation given it by the Board. Because we agree with the federal respondent and the Court of Appeals, and because Cowart concedes that the position of the BRB is not entitled to any special deference, see Brief for Petitioner 25; see also *Potomac Electric Power Co.* v. *Director, Office of Workers' Compensation Programs*, 449 U. S. 268, 278, n. 18 (1980); *Martin* v. *Occupational Safety and*

*Health Review Comm'n, supra,* we need not resolve the difficult issues regarding deference which would be lurking in other circumstances.

As a preliminary matter, the natural reading of the statute supports the Court of Appeals' conclusion that a person entitled to compensation need not be receiving compensation or have had an adjudication in his favor. Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right. See generally *Board of Regents of State Colleges* v. *Roth,* 408 U. S. 564, 577 (1972) (discussing property interests protected by the Due Process Clause and contrasting an entitlement to an expectancy); Black's Law Dictionary 532 (6th ed. 1990) (defining "entitle" as "To qualify for; to furnish with proper grounds for seeking or claiming"). Cowart suffered an injury which by the terms of the LHWCA gave him a right to compensation from his employer. He became a person entitled to compensation at the moment his right to recovery vested, not when his employer admitted liability, an event even yet to happen.

If the language of § 33(g)(1), in isolation, left any doubt, the structure of the statute would remove all ambiguity. First, and perhaps most important, when Congress amended § 33(g) in 1984, it added the explicit forfeiture features of § 33(g)(2), which specify that forfeiture occurs "regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this chapter." We read that phrase to modify the entirety of subsection (g)(2), including the beginning part discussing the written-approval requirement of paragraph (1). The BRB did not find this amendment controlling because the quoted language is not an explicit modification of subsection (1). This is a strained reading of what Congress intended. Subsection (g)(2) leaves little doubt that the contemplated for-

feiture will occur whether or not the employer has made payments or acknowledged liability.

The addition of subsection (g)(2) in 1984 also precludes the primary argument made by the BRB in favor of its decisions in *Dorsey* and this case, and repeated by Cowart to us: That Congress in 1984, by reenacting the phrase "person entitled to compensation," adopted the Board's reading of that language in *O'Leary*. The argument might have had some force if § 33(g) had been reenacted without changes, but that was not the case. In 1984 Congress did more than reenact § 33(g); it added new provisions and new language which on their face appear to have the specific purpose of overruling the prior administrative interpretation. In light of the clear import of § 33(g)(2), the Board erred in relying on the purported lack of legislative history showing an explicit intent to reject the *O'Leary* decision. Even were it relevant, the Board's reading of the legislative history is suspect because as the federal respondent demonstrates, the legislative history of predecessor bills to the eventual 1984 enactment do indicate an intent to overturn *O'Leary*. See Longshoremen's and Harbor Workers' Compensation Act Amendments of 1981: Hearings on S. 1182 before the Subcommittee on Labor of the Senate Committee on Labor and Human Resources, 97th Cong., 1st Sess., 209, 210–211, 396 (1981). In any event, administrative interpretation followed by congressional reenactment cannot overcome the plain language of a statute. *Demarest* v. *Manspeaker*, 498 U. S., at 190. And the language of § 33(g) is plain.

Our interpretation of § 33(g) is reinforced by the fact that the phrase "person entitled to compensation" appears elsewhere in the statute in contexts in which it cannot bear the meaning placed on it by Cowart. For example, § 14(h) of the LHWCA, 33 U. S. C. § 914(h), requires an official to conduct an investigation upon the request of a person entitled to compensation when, *inter alia*, the claim is controverted and payments are not being made. For that provision, the inter-

pretation championed by Cowart would be nonsensical. Another difficulty would be presented for the provision preceding §33(g), §33(f). It mandates that an employer's liability be reduced by the net amount a person entitled to compensation recovers from a third party. Under Cowart's reading, the reduction would not be available to employers who had not yet begun payment at the time of the third-party recovery. That result makes no sense under the LHWCA structure. Indeed, when a litigant before the BRB made this argument, the Board rejected it, acknowledging in so doing that it had adopted differing interpretations of the identical language in §§33(f) and 33(g). *Force* v. *Kaiser Aluminum and Chemical Corp.*, 23 BRBS 1, 4–5 (1989). This result is contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning. *Sullivan* v. *Stroop*, 496 U. S. 478, 484 (1990); *Sorenson* v. *Secretary of Treasury*, 475 U. S. 851, 860 (1986). The Board's willingness to adopt such a forced and unconventional approach does not convince us we should do the same. And we owe no deference to the BRB, see *supra*, at 476.

Yet another reason why we are not convinced by the Board's position is that the Board's interpretation of "person entitled to compensation" has not been altogether consistent; and Cowart's interpretation may not be the same as the Board's in precise respects. At times the Board has said this language refers to an employee whose "employer is actually paying compensation either pursuant to an award or voluntarily when claimant enters into a third party settlement." *Dorsey*, 18 BRBS, at 28; 23 BRBS, at 44 (case below). At other times, sometimes within the same opinion, the Board has spoken in terms of the employer either making payments *or* acknowledging liability. *O'Leary*, 7 BRBS, at 147–149; *Dorsey*, *supra*, at 29; see also *In re Wilson*, 17 BRBS 471, 480 (ALJ 1985). Cowart, on the other hand, would include within the phrase both employees receiving compensation benefits and employees who have a judicial award of compen-

sation but are not receiving benefits. Brief for Petitioner 6. This distinction is an important part of Cowart's response to the position of the United States. Reply Brief for Petitioner 8. It may be that the gap between the Board's and Cowart's positions can be explained by the Board's inconsistency; but that in itself weakens any argument that the Board's interpretation is entitled to some weight.

We do not believe that Congress' use of the word "employee" in subsection (g)(2), rather than the phrase "person entitled to compensation," undercuts our reading of the statute. The plain meaning of subsection (g)(1) cannot be altered by the use of a somewhat different term in another part of the statute. Subsection (g)(2) does not purport to speak to the question of who is required under subsection (g)(1) to obtain prior written approval.

Cowart's strongest argument to the Court of Appeals was that any ambiguity in the statute favors him because of the deference due the OWCP Director's statutory construction, a deference which Nicklos and Compass concede is appropriate. Brief for Private Respondents 7. As we have said, we are not faced with this difficult issue because the views of the OWCP Director have changed since we granted certiorari. *Supra,* at 476. It seems apparent to us that it would be quite inappropriate to defer to an interpretation which has been abandoned by the policymaking agency itself. It is noteworthy, moreover, that even prior to this case the position of the Department of Labor has not been altogether consistent. It is true that the Director has twice, albeit in a somewhat equivocal manner, endorsed the Board's rulings in *O'Leary* and *Dorsey.* First, in a 1986 circular discussing the Board's *Dorsey* case a subordinate of the Director stated: "While the Board's position may not be totally consistent .with the amended language of Section 33(g), we think it is a rational approach and have advised the Associate Solicitor that we will support this position." United States Dept. of Labor, LHWCA Circular No. 86–3, p. 1 (May 30, 1986).

Next, in a manual published in 1989 the Director again adopted the Board's position that written approval of a settlement is required only from employers who are paying compensation; but the statement ends with a qualifying comment, that "[t]he issue of consent to a settlement can be a complex matter. Judicial interpretation may be necessary to resolve the issue. (See LHWCA CIRCULAR 86-03, 5-30-86)." U. S. Dept. of Labor, Longshore and Harbor Workers' Compensation Act (LHWCA) Procedure Manual, ch. 3-600, ¶ 9 (Sept. 1989). On the other hand, the Department of Labor has issued regulations (effective in their current form since 1986) which are explicit that the written-approval requirement of §33(g) applies to a settlement for less than the amount of compensation due under the LHWCA, "regardless of whether the employer or carrier has made payments of [sic] acknowledged entitlement to benefits under the Act." 20 CFR §702.281(b) (1991). So the Department of Labor has not been speaking with one voice on this issue. This further diminishes the persuasive power of the Director's earlier decision to endorse the BRB's questionable interpretation, a decision he has since reconsidered.

The history of the Department of Labor regulation goes far toward confirming our view of the significance of the 1984 amendments. The original §702.281, proposed in 1976 and enacted in final form in 1977, required only that an employee notify his employer and the Department of any third-party claim, settlement, or judgment. 41 Fed. Reg. 34297 (1976); 42 Fed. Reg. 45303 (1977). The sole reference to the forfeiture provisions was a closing parenthetical: "Caution: See 33 U. S. C. §933(g)." In 1985, in response to the 1984 congressional amendments, the Department proposed to amend §702.281 by replacing the closing parenthetical with a subsection (b), stating that failure to obtain written approval of settlements for amounts less than the compensation due under the Act would lead to forfeiture of future benefits. 50 Fed. Reg. 400 (1985). In response to comments, the final

rulemaking modified § 702.281(b) to clarify that the forfeiture provision applied regardless of whether the employer was paying compensation. 51 Fed. Reg. 4284–4285 (1986). Thus the evolution of § 702.281 suggests that at least some elements within the Department of Labor read the 1984 statutory amendments to adopt a rule different from the Board's previous decisions.

We also reject Cowart's argument that our interpretation of § 33(g) leaves the notification requirements of § 33(g)(2) without meaning. An employee is required to provide notification to his employer, but is not required to obtain written approval, in two instances: (1) Where the employee obtains a judgment, rather than a settlement, against a third party; and (2) Where the employee settles for an amount greater than or equal to the employer's total liability. Under our construction the written-approval requirement of § 33(g)(1) is inapplicable in those instances, but the notification requirement of § 33(g)(2) remains in force. That is why subsection (g)(2) mandates that an employer be notified of "any settlement."

This view comports with the purposes and structure of § 33. Section 33(f) provides that the net amount of damages recovered from any third party for the injuries sustained reduces the compensation owed by the employer. So the employer is a real party in interest with respect to any settlement that might reduce but not extinguish the employer's liability. The written-approval requirement of § 33(g) "protects the employer against his employee's accepting too little for his cause of action against a third party." *Banks* v. *Chicago Grain Trimmers Assn., Inc.*, 390 U. S. 459, 467 (1968). In cases where a judgment is entered, however, the employee does not determine the amount of his recovery, and employer approval, even if somehow feasible, would serve no purpose. And in cases where the employee settles for greater than the employer's liability, the employer is pro-

tected regardless of the precise amount of the settlement because his liability for compensation is wiped out. Notification provides full protection to the employer in these situations because it ensures against fraudulent double recovery by the employee.

As a final line of defense, Cowart's attorney suggested at oral argument that Nicklos' participation in the Transco settlement brought this case outside the terms of § 33(g)(1). Tr. of Oral Arg. 4–7. Relying on the recent decision of the Court of Appeals for the Fourth Circuit in *I. T. O. Corporation of Baltimore* v. *Sellman*, 954 F. 2d 239, 242–243 (1992), counsel argued that § 33(g)(1) requires written approval only of "settlement[s] with a third person," and that Nicklos' participation in the Transco settlement meant it was not with a *third person*. Without indicating any view on the merits of this contention, we do not address it because it is not fairly included within the question on which certiorari was granted. See this Court's Rule 14.1(a).

We need not today decide the retroactive effect of our decision, nor the relevance of res judicata principles for other LHWCA beneficiaries who may be affected by our decision. Cf. *Pittston Coal Group* v. *Sebben*, 488 U. S. 105, 121–123 (1988). We do recognize the stark and troubling possibility that significant numbers of injured workers or their families may be stripped of their LHWCA benefits by this statute, and that its forfeiture penalty creates a trap for the unwary. It also provides a powerful tool to employers who resist liability under the Act. Counsel for respondents stated during oral argument that he had used the Transco settlement as a means of avoiding Nicklos' liability under the LHWCA. Tr. of Oral Arg. 23–26. These harsh effects of § 33(g) may be exacerbated by the inconsistent course followed over the years by the federal agencies charged with enforcing the Act. But Congress has spoken with great clarity to the precise question raised by this case. It is the duty of the courts to

enforce the judgment of the Legislature, however much we might question its wisdom or fairness. Often we have urged the Congress to speak with greater clarity, and in this statute it has done so. If the effects of the law are to be alleviated, that is within the province of the Legislature. It is Congress that has the authority to change the statute, not the courts.

For the reasons stated, the judgment of the Court of Appeals is

*Affirmed.*

JUSTICE BLACKMUN, with whom JUSTICE STEVENS and JUSTICE O'CONNOR join, dissenting.

For more than 14 years, the Director of the Office of Workers' Compensation Programs interpreted the Longshore and Harbor Workers' Compensation Act (LHWCA or Act), 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.*, in the very same way that petitioner Floyd Cowart's estate now urges. Indeed, the Director *advocated* Cowart's position in the Court of Appeals, both before the panel and before that court en banc.

After certiorari was granted, however, and after Cowart's opening brief was filed, the federal respondent informed this Court: "In light of the en banc decision in this case, the Department of Labor reexamined its views on the issue." Brief for Federal Respondent 8, n. 6. The federal respondent now assures us that the interpretation the Director advanced and defended for 14 years is inconsistent with the statute's "plain meaning." The Court today accepts that improbable contention, and in so doing rules that perhaps thousands of employees and their families must be denied death and disability benefits. I cannot agree with the federal respondent's newly discovered interpretation, and still less do I find it to be compelled by the "plain meaning" of the statute. The Court needlessly inflicts additional injury upon these workers and their families. I dissent.

## I

Ever since the LHWCA was adopted in 1927, it has included some version of the present §33(g), 33 U. S. C. §933(g), the provision at issue in this case. Because that provision cannot be considered in isolation from the broader context of §33, or indeed, the LHWCA as a whole, some background on the structure of the Act and the history of §33's interpretation is essential.

## A

The LHWCA requires employers to provide compensation, "irrespective of fault," for injuries and deaths arising out of covered workers' employment. §§3(a) and 4(b), 33 U. S. C. §§903(a) and 904(b). In return for requiring the employer to pay statutory compensation without proof of negligence, the Act grants the employer immunity from tort liability, regardless of how serious its fault may have been. See §§5(a) and 33(i). Benefits under the LHWCA are strictly limited, generally to medical expenses and two-thirds of lost earnings, and are set out in detailed schedules contained in the Act itself. See §§7–9. A fundamental assumption of the Act is that employers liable for benefits will pay compensation "promptly," "directly," and "without an award" having to be issued. See §14(a).

In a case where a third party may be liable, the LHWCA does not require a claimant to elect between statutory compensation and tort recovery. §33(a). Where a claimant has accepted compensation under a formal award, then, within a specified time, he may file a civil action against the third party. §33(b). If a claimant recovers in that action, his compensation under the LHWCA is limited to the excess, if any, of his statutory compensation over the net amount of his recovery. §33(f). Section 33(f) thus operates as a setoff provision, allowing an employer to reduce its LHWCA liability by the net amount a claimant obtains from a third party. Where the claimant nets as much or more from the third

party as he would have received from his employer under the LHWCA, the employer owes him no benefits.

Section 33(g) of the LHWCA, 33 U. S. C. § 933(g), addresses the situation in which a claimant-plaintiff settles an action against a third party for *less* than he would have received under the Act. Under § 33(f), considered alone, the claimant in this situation would always be able to collect the remainder of his statutory benefits from the employer. To protect the employer from having to pay excessive § 33(f) compensation because of an employee's "lowball" settlement, § 33(g) conditions LHWCA compensation, in specified circumstances, upon the employer's written approval of the third-party settlement. See *Banks* v. *Chicago Grain Trimmers Assn., Inc.,* 390 U. S. 459, 467 (1968).

Before the LHWCA's 1984 amendments, § 33(g) provided that if a "person entitled to compensation" settled for less than the compensation to which he was entitled under the Act, then the employer would be liable for compensation, as determined in § 33(f), only if the person obtained and duly filed with the Department of Labor the employer's written approval of the settlement. The meaning of the term "person entitled to compensation" has proved to be a difficult issue, both in the pre-1984 version of the Act and—as this case demonstrates—in the Act's current form.

## B

This issue apparently was considered first in *O'Leary* v. *Southeast Stevedoring Co.,* 7 BRBS 144 (1977), aff'd, 622 F. 2d 595 (CA9 1980). In that case, the employer denied liability for the death of the claimant's husband, contending that the decedent was not an employee covered by the LHWCA and that the injury did not arise out of his employment. 7 BRBS, at 145. The employer persisted in denying liability even after its position was rejected by the Benefits

Review Board (BRB or Board).[1]   See *id.*, at 146–147.   Eventually, more than 28 months after her husband's accident, the claimant settled a third-party suit for $37,500.   About one month thereafter, an Administrative Law Judge (ALJ), on remand from the BRB, entered an award for the claimant. The value of the death benefits awarded, assuming that the claimant would live out her normal life expectancy without remarrying, amounted to more than $150,000.   See *In re O'Leary*, 5 BRBS 16, 20 (ALJ 1976).   At that point, the employer contested liability for any compensation on the ground that, under § 33(g), the claimant had forfeited that compensation by failing to obtain the employer's written approval of the settlement.

The ALJ rejected the employer's position, reasoning that the claimant was not a "person entitled to compensation" at the time of the settlement.   The BRB affirmed.   The Board pointed out that the "underlying concept" of the LHWCA is that "the employer upon being informed of an injury will voluntarily begin to pay compensation."   *O'Leary*, 7 BRBS, at 147 (citing § 14(a)).   Further, the Board observed, § 33(g) refers to the conditions under which an employer will be "liable" for compensation under § 33(f); the reference to "liability," the Board reasoned, "contemplat[es] that [the] employer either be making voluntary payments under the Act or that it ha[s] been found liable for benefits by a judicial determination."   *Id.*, at 148.   Moreover, the Board continued, § 33(b) gives the employer the right to pursue third parties only if the employer is paying compensation under an award. Thus, the premise of employer rights under § 33, the Board concluded, is that the employer is "making either voluntary payments under the Act or pursuant to an award."   *Ibid.*

---

[1] The BRB consists of persons appointed by the Secretary of Labor and empowered to "hear and determine appeals raising a substantial question of law or fact" with respect to LHWCA benefits claims.   § 21(b)(3), 33 U. S. C. § 921(b)(3).

The BRB observed that the employer in *O'Leary* had not paid compensation either voluntarily or pursuant to an award, but, instead, consistently had denied liability. It could hardly have been clear to the claimant at the time she settled her third-party suit that the BRB would ultimately decide in her favor. Indeed, only after that settlement and after the ALJ award did the employer concede that the claimant represented a "person entitled to compensation," and then only to argue that, for that reason, she had forfeited her right to compensation under § 33(g). The Board emphasized that the employer's interpretation would place claimants in a severe bind:

> "If a claimant was injured through the negligence of a third party and the employer denied coverage under the Act, a claimant would be forced to sue the third party. However, even if the claimant obtained a reasonable settlement offer, an employer could refuse to give its consent to the third party settlement for any number of reasons, e. g., it does not wish to approve the settlement on a form provided under the Act since its consent to jurisdiction under the Act might be inferred. This could result in a claimant not being paid any compensation, yet the claimant would be afraid to make a third party settlement for in so doing he might waive his rights to compensation under the Act. Ultimately, a claimant going without income for a long enough time could be forced into a third party settlement without employer's consent to obtain money . . . ." *Id.*, at 149.

And under the employer's interpretation of § 33(g), the employee would thereby forfeit all right to compensation under the Act. Surely, the Board concluded, "Congress by requiring written consent could not have contemplated such a result." *Ibid.*

The Court of Appeals for the Ninth Circuit affirmed in an unpublished opinion, App. 113, stating: "The Board's ruling

is reasonable and furthers the underlying purpose of the Act." *Id.*, at 117. The Court of Appeals for the Fifth Circuit, in an unpublished opinion, upheld a similar BRB decision in 1984, finding the *O'Leary* approach "fully consistent with the language, legislative history, and rationale of" § 33(g). See *Kahny* v. *OWCP*, 729 F. 2d 777 (table) and App. 96, 108. No other courts had occasion to examine the *O'Leary* interpretation before the LHWCA was next amended.

C

The Longshore and Harbor Workers' Compensation Act Amendments of 1984, 98 Stat. 1639, revisited § 33(g). *Id.*, at 1652. The former § 33(g) was carried over, with minor changes not relevant here, as § 33(g)(1), and a new subsection (g)(2) was added. Section 33(g) now reads as follows:

"(1) If the person entitled to compensation (or the person's representative) enters into a settlement with a third person referred to in subsection (a) for an amount less than the compensation to which the person (or the person's representative) would be entitled under this Act, the employer shall be liable for compensation as determined under subsection (f) only if written approval of the settlement is obtained from the employer and the employer's carrier, before the settlement is executed, and by the person entitled to compensation (or the person's representative). The approval shall be made on a form provided by the Secretary and shall be filed in the office of the deputy commissioner within thirty days after the settlement is entered into.

"(2) If no written approval of the settlement is obtained and filed as required by paragraph (1), or if the employee fails to notify the employer of any settlement obtained from or judgment rendered against a third person, all rights to compensation and medical benefits under this Act shall be terminated, regardless

of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits under this Act."

In *Dorsey* v. *Cooper Stevedoring Co.*, 18 BRBS 25 (1986), appeal dism'd *sub nom. Cooper Stevedoring Co.* v. *Director, Office of Workers' Comp. Programs, U. S. Dept. of Labor*, 826 F. 2d 1011 (CA11 1987), the Board rejected an employer's argument that the final clause of the new § 33(g)(2) should be understood as overturning the *O'Leary* rule that no duty to obtain approval arises until the employer begins to pay compensation. Subsection (g)(1), the Board stated, reenacted the prior version of § 33(g) as it was interpreted in *O'Leary;* the new subsection, (g)(2), was intended to apply to situations not covered by (g)(1) or *O'Leary.* In these situations—where the employer has neither paid compensation nor acknowledged liability—notice, but not written approval, is required. 18 BRBS, at 29–30. The Board interpreted the final clause of (g)(2)—language that echoes the Board's words in *O'Leary*—to make clear that the notification requirement, described in (g)(2), was not subject to the *O'Leary* limitation that is incorporated in (g)(1). 18 BRBS, at 29.

This interpretation is reinforced, the Board continued, by two other considerations. First, although in a number of instances the 1984 legislative history indicates a congressional intention to override other BRB and judicial decisions, that history "indicates no congressional intent to overrule *O'Leary.*" *Id.*, at 30. Second, the Board observed, this Court has held that the LHWCA "should be construed in order to further its purpose of compensating longshoremen and harbor workers 'and in a way which avoids harsh and incongruous results.'" *Id.*, at 31, quoting *Voris* v. *Eikel*, 346 U. S. 328, 333 (1953), and citing *Northeast Marine Terminal Co.* v. *Caputo*, 432 U. S. 249, 268 (1977). As *O'Leary* made clear, allowing employers to escape all LHWCA liability by withholding approval from any settlement, while refusing to

pay benefits or acknowledge liability, could hardly be thought consistent with the purpose of encouraging prompt, voluntary payment of LHWCA compensation.

## D

Such was the legal background against which Cowart's claim was considered. In the administrative proceedings, the BRB relied on *O'Leary* and *Dorsey* to reject the argument, offered by respondent Nicklos Drilling Company, that by failing to obtain prior written approval of his third-party settlement Cowart had forfeited his LHWCA benefits. Because Nicklos was not paying Cowart benefits, either voluntarily or under an award, the Board reasoned, Cowart was not a "person entitled to compensation" within the meaning of § 33(g)(1), and he therefore was not required to obtain Nicklos' approval of his settlement. 23 BRBS 42, 46 (1989). Instead, the Board held, Cowart was required only to give Nicklos notice of the settlement, as provided in § 33(g)(2). Because Nicklos indisputably had notice of the settlement— indeed, it had notice three months before the settlement was consummated—the Board ruled Cowart was eligible for LHWCA benefits.

On Nicklos' petition for review, the Director of the Office of Workers' Compensation Programs (OWCP)—head of the agency charged with administering the Act—defended the Board's interpretation before the Court of Appeals for the Fifth Circuit. First a panel of the Court of Appeals, and then the full court, by a divided vote sitting en banc, however, rejected the Director's position, ruling that Cowart was a "person entitled to compensation" and was required by § 33(g)(1) to obtain Nicklos' written approval. See 907 F. 2d 1552 (1990) (panel), and 927 F. 2d 828 (1991) (en banc). We are told that after this Court granted certiorari, and after Cowart filed his opening brief, the Director "reexamined" his position and argued that the interpretation of § 33(g) he had maintained for 14 years, and defended in the

Court of Appeals, was inconsistent with the Act's plain meaning.

## II

This Court today agrees with the Director's postcertiorari position that Cowart's claim for compensation is barred by the "clear meaning" of the statute "as written." *Ante,* at 476. According to the Court, Cowart is plainly a "person entitled to compensation" within the meaning of § 33(g)(1), and his failure to obtain Nicklos' written approval of his third-party settlement requires, by the "plain language" of § 33(g), that he be deemed to have forfeited his statutory benefits. Although the Court does not identify any plausible statutory purpose whatsoever advanced by its reading, and although—to its credit—it acknowledges the "harsh effects" of its interpretation, *ante,* at 483, the Court ultimately concludes that the language of § 33 compels it to reject Cowart's position.

In my view, the language of § 33 in no way compels the Court to deny Cowart's claim. In fact, the Court's reliance on the Act's "plain language," *ante,* at 475, is selective: as discussed below, analysis of §§ 33(b) and (f) of the Act shows that, even leaving aside the question whether Cowart is a "person entitled to compensation," a *consistently* literal interpretation of the Act's language would not require Cowart to have obtained Nicklos' written approval of the settlement. Indeed, under a thoroughgoing "plain meaning" approach, Cowart would be entitled to receive *full* LHWCA benefits in addition to his third-party settlement, not just the excess of his statutory benefits over the settlement.

At the same time, a consistently literal interpretation of the Act would commit the Court to positions it might be unwilling to take. The conclusion I draw is not that the Court should adopt a purely literal interpretation of the Act, but instead that the Court should recognize, as it has until today, that the LHWCA must be read in light of the purposes and policies it would serve. Once that point is recog-

nized, then, as suggested by the Court's closing remarks on the "stark and troubling" implications of its interpretation, *ante*, at 483, it follows that recognition of Cowart's claim is fully consistent with the Act.

## A

Were the Court truly to interpret the Act "as written," it would not conclude that Cowart is barred from receiving compensation. Section 33(g)(1) of the LHWCA, on which the Court's "plain meaning" argument relies, provides that if a "person entitled to compensation" settles with a third party for an amount less than his statutory benefits, his employer will be "liable for compensation *as determined under subsection (f)*" only if the "person entitled to compensation" obtains and files the employer's written approval. The "plain language" of subsection (g)(1) does not establish any general written-approval requirement binding either all "persons entitled to compensation," or the subset of those persons who settle for less than their statutory benefits. Instead, it requires written approval only as a condition of receiving compensation "as determined under subsection (f)." Where the "person entitled to compensation" is not eligible for compensation "as determined under subsection (f)," subsection (g)(1) does not require him to obtain written approval.

The "plain language" of subsection (f) in turn suggests that the provision does not apply to Cowart's situation. Subsection (f), by its terms, applies only "[i]f the person entitled to compensation institutes proceedings within the period prescribed in subsection (b)." And the "period prescribed in subsection (b)" begins, by the terms of that subsection, upon the person's "[a]cceptance of compensation under an award in a compensation order filed by the deputy commissioner, an administrative law judge, or the Board." Cowart's third-party suit was clearly *not* instituted within this period: He filed suit *before* any award of LHWCA benefits, and he still has not accepted (or been offered) compensation

under any award. Thus, he does not come within the "plain meaning" of subsection (f), and, accordingly, for the reasons given above, he would not be bound by the subsection (g)(1) written-approval requirement. It would also follow that, because Nicklos indisputably received the notice required by subsection (g)(2), that provision would not bar Cowart from receiving LHWCA compensation and medical benefits.

Indeed, if Cowart is not covered by subsection (f), he would appear to have been eligible for a larger award than he sought. Subsection (f) does not authorize compensation otherwise unavailable; instead, it operates as a *limit*, in the specified circumstances, on the employer's LHWCA liability. If read literally, subsection (f) would not bar Cowart from receiving full LHWCA benefits, *in addition to* the amount he received in settlement of the third-party claim.

It is true that § 33(f) has not always been read literally. Subsection (f) has been assumed to be applicable where, for example, the claimant's third-party suit was filed after an employer *voluntarily* began paying LHWCA compensation, not just where compensation was paid pursuant to an award. See, *e. g., I. T. O. Corp. of Baltimore* v. *Sellman*, 954 F. 2d 239, 240, 243–245 (CA4 1992); *Shellman* v. *United States Lines, Inc.*, 528 F. 2d 675, 678–679, n. 2 (CA9 1975) (referring to the availability of an employer's lien, where the employer has paid compensation without an award, as "judicially created" rather than statutory), cert. denied, 425 U. S. 936 (1976). That interpretation is eminently sensible and consistent with the statutory purpose of encouraging employers to make payments "promptly," directly," and "without an award." See § 14(a). A contrary interpretation would penalize employers who acknowledge liability and commence payments without seeking an award, and it would reward employers who, whether in good faith or bad, contest their liability until faced with a formal award. See *Shellman*, 528 F. 2d, at 679, n. 2 ("The purpose of this Act would be frustrated if a different result could be reached merely because

the employer pays compensation without entry of a formal award").

It is not obvious, however, that a similar argument from statutory purpose should be available to employers such as Nicklos who refuse to pay benefits and then seek shelter under § 33(f) (and by extension, § 33(g)(1)). And the fact remains that the Court professes to interpret the "clear meaning" of the statute "as written." The Court's interpretation today, however, is no more compelled by the language of the LHWCA than the interpretation Cowart defends: The Court is simply insensible to the fact that it implicitly has relied upon presumed statutory purposes and policy considerations to bring Nicklos and Cowart under the setoff provisions of § 33(f), thus absolving Nicklos of the first $29,000 in LHWCA liability. Only at *that* point does the Court invoke the plain meaning rule and insist on a "literal" interpretation of § 33(g)(1). This selective insistence on "plain meaning" deprives Cowart's estate of the last $6,242.17 Nicklos would otherwise have been bound to pay.

## B

For these reasons, I think it clear that a purely textual approach to the LHWCA cannot justify the Court's holding. In my view, a more sensible approach is to consider § 33(g) as courts always have considered the other parts of § 33—in relation to the history, structure, and policies of the Act.

## 1

Looking first to § 33's history, for present purposes the most relevant aspect is the 1984 amendment to § 33(g) through which that provision assumed its present form. The amended provision clearly bears the impress of the Board's *O'Leary* decision. The reference in § 33(g)(2) to that subsection's applicability, "regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits," tracks the limitation

recognized in *O'Leary*—a limitation that had been unanimously approved by panels of two Federal Courts of Appeals. The question, then, is whether Congress sought to incorporate that holding or to repudiate it in the 1984 amendments to § 33(g).

The critical fact in this inquiry is Congress' use of the term "employee," rather than "person entitled to compensation," in connection with the notification requirement. The use of this term is in marked contrast to the other clauses of § 33(g). Section 33(g)(1) conditions § 33(f) compensation of a settling "person entitled to compensation" on securing the employer's written approval, and § 33(g)(2) provides, somewhat redundantly, that a "person entitled to compensation" forfeits all rights to compensation and medical benefits if the written approval mentioned in § 33(g)(1) is not obtained. The notification clause of § 33(g)(2), however, provides that "if the *employee* fails to notify the employer of any settlement obtained from or judgment rendered against a third person, all rights to compensation and medical benefits . . . shall be terminated, regardless of whether the employer or the employer's insurer has made payments or acknowledged entitlement to benefits" (emphasis added).

The use of the term "employee" in § 33(g)(2) strongly suggests that Congress intended to incorporate the BRB's holding in *O'Leary*. As mentioned, the language Congress chose for the last clause of § 33(g)(2) indicates that it was aware the Board had adopted a restrictive interpretation of the term "person entitled to compensation." Congress retained that term in connection with the written-approval requirement of subsection (g)(1). Yet Congress chose the broad term, "employee," for the notification clause of subsection (g)(2), and "employee," unlike "person entitled to compensation," is a term expressly defined in the statute. See § 2(3).[2] The

---

[2] Subject to exceptions not applicable here, that section of the Act defines the term "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring

Court cannot explain why Congress would have chosen two different terms to apply to the different requirements. Indeed, on the Court's interpretation, the two terms are identical in their extension. On the Court's reading, the term "person entitled to compensation" denotes only a statutory employee who has a claim that, aside from the requirements of § 33(g), would be recognized as valid. And that is exactly the denotation of the term "employee" in connection with the notification requirement. The fact that Congress chose to use different terms in connection with the different § 33(g) requirements—using, with respect to the written-approval requirement, a term that it knew had been narrowly interpreted, and using, with respect to the notification requirement, a term broadly defined in the statute itself—surely indicates that Congress intended the two terms to have different meanings. Had Congress intended the meaning the Court attributes to it, it would have used the same term in both contexts.[3]

### 2

The inference that Congress intended to adopt the *O'Leary* rule in the amended language of § 33(g) is only strengthened

---

operations, and any harborworker including a ship repairman, shipbuilder, and ship-breaker."

[3] Two of the Court's other arguments concerning the 1984 amendments may deserve brief mention. First, the Court suggests in passing that "the legislative history of predecessor bills to the eventual 1984 enactment do indicate an intent to overturn *O'Leary*," citing snippets of written testimony submitted during the lengthy 1981 hearings. See *ante*, at 478. Needless to say, statements buried in hearings conducted *three years before the bill's passage* fall far short of demonstrating any such congressional intent. The BRB was correct when it said in *Dorsey* that the legislative history of the 1984 amendments indicates no intention to overturn *O'Leary*.

Second, the Court places great significance upon the fact that "at least some elements within the Department of Labor" read the post-1984 statute differently from the Director of OWCP. *Ante*, at 482. The Court is quite clear, however, that it is the Director who administers the Act, see *ante*, at 480, not these other "elements," and that the Director does not ask for deference to his recently adopted interpretation.

by consideration of the factual context to which the provision was designed to apply. As the Board noted in *O'Leary,* and as the Director argued to the Court of Appeals, the Act presumes that employers, as a rule, will promptly recognize their LHWCA obligations and commence payments immediately, without the need for a formal award. See § 14(a). In that situation, the claimant generally knows the value of the benefits to be received, and can accurately compare that figure to any settlement offer. The claimant in this situation has no strong interest in the precise amount of any settlement that nets less than the statutory benefits, so long as the costs of suit are covered, because by operation of § 33(f), he would not be allowed to retain any of the proceeds. On the other hand, the employer who has acknowledged liability has a strong interest in recovering from the third party any benefits already paid to the claimant and in reducing or eliminating any future benefits it has committed itself to pay. For the employer in this situation, the precise amount of a settlement for less than the claimant's statutory benefits is vitally important: any net dollar the claimant recovers in a third-party action is a dollar less the employer will have to pay in LHWCA benefits.

Given the parties' different incentives in the situation where the employer already is paying benefits, it makes sense to require the claimant to protect the employer's interest, by requiring settlements to be reasonable in the employer's judgment. At the same time, giving the employer this power of approval does not generally threaten the claimant's interests, since, as mentioned, only the employer has an interest in settlements above the threshold of the claimant-plaintiff's expenses and below the amount of promised or delivered LHWCA benefits.

Matters are quite different, however, when (as in the present case) the employer has refused to make statutory payments and is not subject to an enforceable award at the time of settlement. First, the claimant generally will not be able

to estimate with certainty whether he will receive any LHWCA benefits, let alone how much. Accordingly, the calculation required by § 33(g)—a comparison between LHWCA benefits and settlement amount—will be far more difficult. Second, the claimant who is not receiving LHWCA payments, and who cannot be certain that he ever will receive payments, will have a much more powerful interest in negotiating a third-party settlement that is as favorable as possible. This claimant, unlike its counterpart who is receiving payments, therefore will have a strong incentive—independent of the § 33(g) requirements—to protect any interest the employer might have in reducing potential LHWCA liability. Finally, disabled longshore employees, or the families of a longshoreman killed on the job, are likely to be in a highly vulnerable position, subject to financial pressure that may lead them to overvalue a present lump-sum payment and undervalue future periodic payments that might eventually be available under an LHWCA award.

The employer who refuses to pay, by contrast, has taken the position that it owes no LHWCA benefits that may be reduced through a third-party settlement, and thus that it has no real interest in the amount for which the third party settles. Moreover, as has been noted, the claimant who is not receiving benefits has a strong incentive to protect the employer's interest in reducing or eliminating any LHWCA liability that might eventually be imposed. Under the Court's interpretation of § 33(g)(1), however, such an employer in many cases can ensure that it will never be required to pay LHWCA benefits, even if it might otherwise ultimately be determined to be liable, simply by withholding approval of any settlement offer, regardless of amount. In practice, recalcitrant employers will seek to exempt themselves from statutory liability by withholding approval of settlements, hoping that their employees' need for present funds will force them to settle without approval. I cannot believe that Congress intended to require LHWCA claim-

ants to bet their statutory benefits on the possibility that future administrative and perhaps judicial proceedings, years later, might vindicate their position that the employer should have been paying benefits—particularly when the employer's asserted interest is already adequately protected independently of § 33(g)(1).

3

The Court recognizes the patent unfairness of this situation, and it as much as admits that its interpretation is out of line with the policies of the Act. See *ante*, at 483. Nevertheless, the Court holds that the plain meaning of the term "person entitled to compensation" clearly applies to both categories of claimants—those whose employers have denied liability, as well as those whose employers have acknowledged that they must pay statutory benefits. See *ante*, at 477. For that reason, the Court implies, regardless of what Congress may have thought it was accomplishing in the 1984 amendments, the words "person entitled to compensation" simply will not bear the construction *O'Leary* gave them. See *ante*, at 478–479.

Even setting aside my doubts, expressed above, about the plain meaning rule's application to this statute, I am not persuaded by the Court's contention. In my view, it does not strain ordinary language to describe claimants whose employers have acknowledged LHWCA liability as "persons entitled to compensation," but to withhold that description from claimants whose employers have denied liability for compensation. This is particularly so, given the context in which the term appears in the statute. Section 33(g)(1) requires the "person entitled to compensation" to compare two figures—the amount of a settlement offer, on the one hand, and the amount of compensation to which the person is entitled, on the other. But what is that latter figure in a situation in which the employer denies liability in full or in part? Doubtless, the claimant could hazard a guess by consulting the Act's jurisdictional provisions concerning who is covered

for which kind of accident, the compensation schedules included in the Act, and, in the case of a disability claim, the opinion of the claimant's doctor that the claimant, in fact, is disabled. The very nature of the situation, however, is that it is not clear that such a person is indeed "entitled to compensation"—that question, after all, is exactly the issue that the employer's position requires to be determined in administrative and perhaps subsequent judicial proceedings. The *O'Leary* limitation of the term "person entitled to compensation" to the situation in which the claimant's employer has acknowledged liability and commenced payments seems to me fully consistent with the requirements of ordinary language.

It is true, as the Court observes, that under the *O'Leary* interpretation, the term "person entitled to compensation" would take on different meanings in different contexts. See *ante*, at 478. This Court, however, has not inflexibly required the same term to be interpreted in the same way for all purposes. Compare *Barnhill* v. *Johnson*, 503 U. S. 393, 401–402, and n. 9 (1992), with *id.*, at 406 (STEVENS, J., dissenting) (noting that the maxim is "not inexorable," but arguing that because "nothing in the [statute's] structure or purpose" counsels otherwise, the Court should have applied it). This Court has recognized:

> "Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section. . . .
>
> "It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the legislature intended it should have in each instance." *Atlantic Cleaners & Dyers, Inc.* v. *United States*, 286 U. S. 427, 433 (1932).

This case is one in which the statutory term in question should be read contextually, rather than under the assumption that the term necessarily has the same meaning in all contexts. The phrase "person entitled to compensation" is not defined in the statute, and it is susceptible of at least two interpretations—a "formalist" interpretation, according to which one may be entitled to compensation whether or not anyone ever acknowledges that fact, and a "positivist" or "legal realist" interpretation, according to which one is entitled to compensation only if the relevant decisionmaker has so declared. Which of these two senses is "correct" will depend upon context. The latter sense, I have suggested, is appropriate to a context in which liability for compensation is disputed and the employee is called upon to predict the future course of administrative and perhaps judicial proceedings—not just as to liability, but as to the precise amount of liability. And, in any event, I think, the text and circumstances of the 1984 amendment to § 33(g) indicate that Congress intended to adopt the "realist" interpretation found in *O'Leary.*

Moreover, the Court simply has failed to apply, or even mention, a maxim of interpretation, specifically applicable to the LHWCA, that strongly supports Cowart's position. This Court long has held that " '[t]his Act must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' " *Director, OWCP* v. *Perini North River Associates,* 459 U. S. 297, 315–316 (1983), quoting *Voris* v. *Eikel,* 346 U. S., at 333. The only point at which the Court in this case consults the purposes of the Act is at the end of its opinion, when it assures the reader that its interpretation of the *notification requirement* of § 33(g)(2)—as opposed to its interpretation of the written-approval requirement stated in § 33(g)(1)—is consistent with the statute's purposes. See *ante,* at 482. Finally, underscoring its refusal to apply the maxim of liberal construction to this case, the Court ultimately acknowledges

that the interpretation of § 33(g) it has adopted has "harsh effects" and "creates a trap for the unwary." *Ante*, at 483. For my part, I can imagine no more appropriate occasion on which the maxim should be applied.

### 4

Once it is recognized that a claimant whose employer denies LHWCA liability is not a "person entitled to compensation" for purposes of § 33(g)(1), the proper resolution of this case is clear. Cowart was just such a claimant, and, accordingly, he was not bound by § 33(g)(1)'s written-approval requirement. It is undisputed that he satisfied the notice requirement of § 33(g)(2). It follows that § 33(g) is no bar to Cowart's eligibility for benefits.

### III

The Court recognizes "the stark and troubling possibility that significant numbers of injured workers or their families may be stripped of their LHWCA benefits by this statute." *Ibid.* It attempts to justify the "harsh effects" of its decision on the ground that it is but the faithful agent of the Legislature, and "Congress has spoken with great clarity to the precise question raised by this case." *Ibid.* In my view, Congress did not answer the question in the way the Court suggests, let alone did it do so "with great clarity." The responsibility for today's unfortunate decision rests not with Congress, but with this very Court.

I dissent.