### FIRST UNION NATIONAL BANK OF FLORIDA

v.

### Ronald E. HARMON.

No. Y–98–131.
Bankruptcy No. 95–58325–JS.
Adversary No. 97–5257–JS.

United States District Court,
D. Maryland.

April 20, 1998.

Kimberly D. Marshall, Waldorf, Maryland, for appellant.

Richard B. Hill, Bethesda, Maryland, for appellee.

## MEMORANDUM OPINION

YOUNG, Senior District Judge.

### I.

Appellee, First Union National Bank of Florida, brought this adversary proceeding in the Bankruptcy Court to determine the non-dischargeability of a debt resulting from a judgment against Appellant, Ronald E. Harmon, in the Circuit Court for Orange County, Florida. The Bankruptcy Judge denied Harmon's motion for judgment on the pleadings and entered an order finding the disputed debt non-dischargeable.

The facts of this case are not in dispute. First Union employed Harmon as a branch manager in one of its Florida branches during the 1980s. In 1985, First Union sued Harmon in the Circuit Court for Orange County, Florida, claiming that he fraudulently embezzled monies from the bank during his employment. In 1988, the Florida court rendered a judgment against Harmon for $66,434.84. In 1995, Harmon properly filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Maryland. The Bankruptcy Court set a deadline of February 18, 1996 for creditors to object to the discharge of Harmon's debts. First Union was listed in the petition as a creditor of Harmon. No objections were filed with the court, and Harmon received a discharge on February 23, 1996 which released him from all judgment debts dischargeable under 11 U.S.C. § 523, except debts under 11 U.S.C. §§ 523(a)(2), (4), (6)

or (15) later determined to be nondischargeable.

On April 29, 1997, more than one year after Harmon received his discharge in bankruptcy, First Union initiated this proceeding to determine the dischargeability of the debt resulting from the Florida judgment against Harmon under 11 U.S.C. § 523(a)(11), and the bankruptcy case was reopened to consider the issue. Harmon then moved for judgment on the pleadings, arguing that the complaint was filed untimely under FED.R.BKRTCY.PROC. 4007. The Bankruptcy Judge denied the motion, holding _that the plain language of Rule 4007(b) permitted filing of the complaint at any time because it does not seek to determine the non-dischargeability of debt under 11 U.S.C. § 523(c). Harmon did not contest the non-dischargeability per se of the disputed debt, and the Bankruptcy Judge entered judgment for First Union, finding the debt non-dischargeable under 11 U.S.C. § 523(a)(11). This appeal followed.

## II.

■ The sole issue for decision is whether First Union's complaint below was filed timely under Rule 4007 and 11 U.S.C. § 523. The Court reviews the Bankruptcy Court's legal conclusion on this issue *de novo*. *In re Southeast Hotel Properties Ltd. Partnership*, 99 F.3d 151, 154 (4th Cir.1996).

■ Rule 4007(b) provides that a complaint to determine the dischargeability of a debt other than under 11 U.S.C. § 523(c) may be filed at any time, and permits the Bankruptcy Court to re-open a case to permit filing of a complaint under this Rule. Rule 4007(c), in contrast, requires that a complaint to determine the dischargeability of a debt pursuant to § 523(c) be filed no later than 60 days after the first date set for the meeting of the creditors pursuant to 11 U.S.C. § 341(a)—in this case, February 18, 1996.

■ The starting point for interpreting any federal statute is its language, and if Congress' intent is clear from the language, no further inquiry is permitted. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993); *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). The plain language of Rule 4007(b) permitted First Union to bring this action under § 523(a)(11) at any time, and permitted the Bankruptcy Court to re-open the case for that purpose. Harmon argues that this case falls into the rubric of § 523(c), requiring First Union to file its action no later than sixty days from the date set for the first meeting of creditors pursuant to 11 U.S.C. § 341(a).

Section 523(c)(1) discharges debtors from debts described in §§ 523(a)(2), (4), (6) and (15) unless the creditor requests and receives a hearing at which the Bankruptcy Court determines that the debt is excepted from discharge. Notably, § 523(c)(1) contains no reference to debts contained in § 523(a)(11). The reference to § 523(a)(11) contained in § 523(c)(2), which excludes from § (c)(1) cases brought by a regulatory agency of federal depository institutions which seek to recover debts described under §§ 523(a)(2), (4), (6) or (11), does not advance Harmon's case because it is an exception to Rule 523(c)(1), and applies only to regulatory agencies, not to a depository institution like First Union.

Harmon contends that Congress, by enacting § 523(a)(11), intended to streamline litigation during the savings and loan crisis by vesting courts other than the Federal Bankruptcy Courts with jurisdiction to adjudicate disputes concerning fraud occurring in banking institutions, and argues that a literal reading of § 523(c)(1), which makes no reference to § 523(a)(11), renders the language of § 523(c)(2) superfluous by expanding a regulatory agency's right to recover for fraudulently obtained funds while failing concomitantly to ex-

pand § 523(c)(1). Harmon is correct that the plain language of § 523(c)(2), by including debts under § 523(a)(11), is superfluous because, as discussed above, § 523(c)(1) is not applicable under the terms of § 523(c)(2), because § 523(a)(11) is, by definition, not a case within the purview of § 523(c)(1), and because First Union is not a regulatory institution. *See* COLLIER ON BANKRUPTCY ¶ 523.17, at 523–102 to –103. Thus, this case falls outside the purview of 523(c)(2).

Federal courts hesitate to interpret statutes in a manner which renders part of a statute surplusage, *see Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), and a revised or newly-enacted statute is presumed harmonious with existing law and its judicial construction. *In re Witt,* 113 F.3d 508, 513 (4th Cir.1997). This canon of statutory interpretation stems from the equally well-settled principle that Congress, in passing legislation, does not operate in a vacuum and is presumed to know the existing law when it acts. *South Dakota v. Yankton Sioux Tribe,* 522 U.S. 329, 118 S.Ct. 789, 801, 139 L.Ed.2d 773 (1998). Congress added § 523(a)(11) by passing the Crime Control Act of 1990, *see* Pub.L. No. 101–647, 104 Stat. 4789 (1990), and subsequently amended § 523(c)(1) to include debts described in § 523(a)(15). *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, 108 Stat. 4106 (1994). Had Congress wished to amend § 523(c)(1) to include debts described in § 523(a)(11), it could have done so when it passed the Bankruptcy Reform Act. Congress presumably knew in 1994 that § 523(a)(11) was not included within § 523(c)(1)'s description of debts not discharged by bankruptcy, yet chose, for whatever reason, not to include them when it amended § 523(c)(1) in 1994. Under the negative pregnant rule, when Congress includes particular language in one section of a statute, and omits it in another, the Court presumes Congress acted intentionally and purposely in the disparate inclusion or exclusion absent evidence to the contrary. *Bates v. United States,* 522 U.S. 23, 118 S.Ct. 285, 290, 139 L.Ed.2d 215 (1997).

Simply stated, Congress' decision to reference debts under § 523(a)(11) only in § 523(c)(2), and the plain language of Rule 4007 and § 523, evince Congress' intention to exclude debts under § 523(a)(11) from § 523(c)(1), despite the resulting irregularity which arises by including § 523(a)(11) within § 523(c)(2). This conclusion, and the fact that First Union is not a regulatory institution, indicate that First Union's complaint to determine the dischargeability of the debt created by the Florida judgment does not arise under § 523(c). Accordingly, First Union timely filed its complaint under Rule 4007(b). *See In re Stecklow,* 144 B.R. 314, 318 (Bkrtcy.D.Md.1992) (stating that a bankruptcy case may be reopened at any time under Rule 4007(b) to try issues arising, *inter alia,* under § 523(a)(11)); *In re Rosage,* 189 B.R. 73, 78 (Bkrtcy.W.D.Pa.1995) (same).[1]

Accordingly, the Court holds that First Union's complaint was filed timely in the Bankruptcy Court. The decision of the Bankruptcy Court is therefore affirmed.

---

1. *Obiter dictum* in *In re Betts,* 142 B.R. 819, 824 (Bkrtcy.N.D.Ill.1992), cited below by Harmon, suggests that a complaint to determine the dischargeability of a debt under § 523(a)(11) falls within § 523(c) by stating that "the sixty-day time limit of [Rule 4007(c)] only applies if the underlying theory of a dischargeability complaint is based on fraud, false ... statement, fraud or defalcation by a fiduciary". *Id.* As the Bankruptcy Judge noted, this language is *dictum* because the case concerned discharge under § 523(a)(7). Even if the language were not *dictum,* the Court, based on the above analysis, declines to follow *Betts* to the extent it is inconsistent with this Opinion.