Kevin **ROGERS**

v.

**TRICO MARINE ASSETS, INC., Gilbert Cheramie Boats, Inc., and Universal Ogden, Inc.**

Civil Action No. 96–2056.

United States District Court, E.D. Louisiana.

June 23, 1997.

William Eldren Bradley, Mandeville, LA, for Kevin Rogers.

Thomas G. O'Brien, Michael Needham Mire, Adams & Reese, New Orleans, LA, for Trico Marine Operators, Inc.

John B. Peuler, Gregory Lawrence Ernst, McAlpine, Peuler & Cozad, New Orleans, LA, for Gilbert Cheramie Boats, Inc.

Grady S. Hurley, Jonathan H. Sandoz, Jones, Walker, Waechter, Poitevant, Carrere & Denegre, New Orleans, LA, Michelle Marie O'Daniels, Rice, Fowler, Kingsmill, Vance, Flint & Rodriguez, New Orleans, LA, for Universal Ogden Services.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is a motion for summary judgment filed by the defendant, Gilbert Cheramie Boats, Inc., seeking to dismiss the claims brought against it by plaintiff, Kevin Rogers. For the following reasons this motion is GRANTED.

## BACKGROUND

Plaintiff, Kevin Rogers, was employed by Universal Ogden, Inc. ("Universal Ogden") as a field supervisor of an offshore facility. On February 19, 1996 he was traveling aboard the M/V BATTLE RIVER on the Atchafalaya River near Morgan City, Louisiana en route to the work site when a collision occurred between that vessel and the M/V CLAY MARIE. The plaintiff was thrown to the deck and sustained injuries to his back. When the pain persisted, he sought medical treatment.

On March 13, 1996 Rogers presented himself to Ky's Chiropractic Clinic complaining of neck and back pain related to the February 19th collision. An initial evaluation found a cervical and lumbar sprain/strain. Rogers returned for chiropractic treatment on March 25, 1996.

On March 29, 1996 Rogers was seen by his employer's physician, Dr. David Reiss, complaining of low back pain which extended down his leg. X-rays and an MRI were performed. These tests revealed a narrowed, dessicated L4–5 intervertebral disc and a bulging disc at the L5–S1 level.

Dr. Reiss referred Rogers to an orthopedist, Dr. Gregor Hoffman, who commenced treating Rogers on a conservative basis. Dr. Hoffman's overall impression was thoracic sprain/strain, coupled with lumbar sprain/strain with at least one degenerative disc.

On April 17, 1996, Rogers underwent physical therapy at Health South Sports Medicine Rehabilitation Center. An examination revealed decreased flexibility in the thoracolumbar paraspinals, poor lumbar mobility, and abnormal weakness for his body type.

In April of 1996, unrepresented by counsel, Rogers engaged in settlement discussions with Gilbert Cheramie Boats, Inc. ("Cheramie"), the owner of the M/V CLAY MARIE. Gilbert Cheramie Boats initially offered to settle with Rogers for $6,000.00. Rogers rejected that offer and continued to negotiate. He eventually agreed to settle for $10,-000.00. On April 18, 1996, before a notary public, Rogers signed a Release of All Claims, after swearing that he had read and understood the document and that he was signing it freely.

Rogers' employer, Universal Ogden, did not approve of the settlement, either verbally or in writing, and was not even aware of the settlement before it was consummated.

On June 17, 1996 plaintiff filed suit against Gilbert Cheramie Boats, Inc. (Cheramie), the owner of the M/V CLAY MARIE, Trico Marine Assets, Inc. (Trico), the owner of the M/V BATTLE RIVER, the boat in which he was a passenger, and his employer, Universal Ogden Services, Inc. (Universal Ogden).[1]

On July 18, 1996 Rogers was seen by Dr. Stuart Phillips, who diagnosed "a possible cervical disc, a lumbar herniated nucleus pulposes, a left sacroilac strain and sublaxation." Subsequently, Rogers underwent a computed tomography scan, which indicated that he had a central disc herniation abutting upon the theca at L4–5, and a focal center/left paracentral disc bulge at L5–S1.

Defendant Cheramie now moves for summary judgment dismissing the claims brought against it by the plaintiff, Rogers, on the ground that any and all such claims were compromised and settled.

## LEGAL STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to the interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. In this analysis, the court must view the facts and inferences from the evidence in the light most favorable to the nonmoving party. *Crescent Towing & Salvage Co. v. M/V Anax,* 40 F.3d 741, 743 (5th Cir.1994). Once the moving party has demonstrated that there is no genuine issue of material fact, the burden shifts to the nonmoving party to

---

1. Suit was initially filed under the Jones Act. Since the plaintiff is not a seaman, the Jones Act is not applicable and Universal Ogden was dismissed as a defendant. Universal Ogden has cross-claimed against Cheramie and Trico seeking to recover $11,083.86 in compensation and medical it paid to the plaintiff under the Longshore and Harbor Workers' Compensation Act.

prove there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585–587, 106 S.Ct. 1348, 1355–1356, 89 L.Ed.2d 538 (1986). The non-moving party may not depend solely on denials contained in the pleadings, but must submit specific facts. Fed.R.Civ.P. 56(e). Mere conclusory rebuttals by the nonmoving party will not defeat a motion for summary judgment. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *reh. denied,* 961 F.2d 215 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Moreover, if the factual contest makes the nonmoving party's claim implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This legal standard will be used in the following analysis.

## *ANALYSIS*

Plaintiff's claims are within the admiralty jurisdiction of this Court and, consequently, are governed by the substantive principles of the General Maritime Law. *East River S.S. v. Transamerica Delaval Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). *Executive Jet Aviation, Inc. v. Cleveland,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). Compromises of disputed claims are favored by courts. *See J. Kahn & Co. v. Clark,* 178 F.2d 111 (5th Cir.1949). Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party. *Cia Anon Venezolana De Navegacion v. Harris,* 374 F.2d 33, 35 (5th Cir.1967).

Rogers does not deny that he entered into the settlement agreement with Cheramie. Rather, he claims that the settlement agreement between him and defendant Cheramie is voidable because of mutual mistake and/or fraud. Moreover, plaintiff asserts that the release is *void ab initio* because his employer was not a party to it and failed to give its consent as contemplated by Section 933(g) of the Longshore and Harbor Workers' Compensation Act. *See* 33 U.S.C. § 933(g).

## A. *BURDEN OF PROOF*

■ The plaintiff first seeks special treatment. He suggests he should be treated as a seaman and the release given the same scrutiny and skepticism as it would receive if it involved a ward of the admiralty. *See* 1 *Benedict on Admiraly* § 6 (7th ed.1994). This position is not supported by the law or facts.

At the time of his injury the plaintiff was a passenger in a crew boat. He is not a seaman. Thus he is not entitled to the solicitude—and even burden shifting—which the maritime law has traditionally afforded those who respond to the call of the sea. Even prior to 1972—the date *Sieracki* was sunk—it would be stretching maritime law past the breaking point to postulate that the plaintiff, a field supervisor, does work "traditionally done by seaman of old" so as to entitle him to doctrines created to benefit and protect seaman. *See Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); 1A *Benedict on Admiralty* § 13 (7th ed.1994); 1 Schoenbaum, *Admiralty and Maritime Law* § 7–10 (2d ed.1994). The plaintiff must be treated as an ordinary employee and, since he is the one attacking the release, he must bear the burden of proving that the release is invalid. *See Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386 (5th Cir.1984); *See also Capotorto v. Compania Sud Americana de Vapores,* 541 F.2d 985 (2d Cir.1976); *Harris v. Lykes Bros. S.S. Co.,* 375 F.Supp. 1155 (E.D.Tex.1974).

## B. *MUTUAL MISTAKE*

■ Plaintiff claims that at the time he entered into settlement negotiations with defendant Cheramie, he believed he had a strain or sprain of the low back and would shortly be back on his feet strong and able to return to offshore work. He apparently ascribes the same optimism to Cheramie.

Plaintiff's assertions do not square with the facts. It is uncontested that before the plaintiff signed the release on April 18, 1996 an MRI had shown that he had a degenerative disc condition with some bulging to the left side. Dr. Gregor Hoffman, an orthopedist, concluded that the plaintiff had "some degenerative disc changes at L4–5 and L5–

S1 with a bulge there." The diagnostic tests and physical examination clearly revealed some disc pathology. Moreover, Rogers testified in his deposition that at the time he signed the release settling his case against Cheramie, he was still in discomfort and was still receiving medical treatment. These uncontested facts refute Rogers' assertion that he signed the release under the mistaken belief that his back condition amounted to nothing more than a sprain or strain.

By signing the release the plaintiff declared his willingness to take the chance his back might worsen or be permanent.[2] Despite these uncertainties he signed the release and accepted the $10,000. There is nothing in the record to indicate a failure to disclose any known medical facts with respect to the plaintiff's condition, nor does there appear any attempt to mislead him as to any prognosis. His attempt to invalidate the release on the basis of mutual mistake is not supported by the facts or law. As the Fifth Circuit explained in *Strange v. Gulf and South American Steamship Co., Inc.*, 495 F.2d 1235 (5th Cir.1974):

> There would be little security in the settlement of a personal injury claim if the binding effect of such a settlement depended upon the certainty of the extent and the outcome of the injuries involved. It is the very consequences of these uncertainties which the parties seek to foreclose by settlement and to take their chances on their outcome.

*Id.* at 1237; *see also Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

The distinction between a mistake as to the nature of an injury and a mistake concerning the outcome is well illustrated in *Robertson v. Douglas Steamship Co.*, 510 F.2d 829 (5th Cir.1975), the case upon which Rogers relies in support of his position that the release should be set aside because of

mutual mistake concerning his diagnosis. In *Robertson*, the plaintiff was involved in two accidents. In the first, he was hit in the head when a cargo batten pulled loose; in the second, several sacks fell on him. He was diagnosed and treated for a contusion of the scalp and contusion above his left eye as well as pains in the neck, ribs, knee and ankle. He settled these claims and was subsequently diagnosed as having a very rare disease, indiopattric retroperitoneal fibrosis, a scarring of the peritoneal lining in the lower abdomen. The court in *Robertson* held that the release could be invalidated on grounds of mutual mistake because the mistake "went not merely to the extent and outcome of [the plaintiff's] injury, but indicated that he was the victim of an injury entirely different in nature from that diagnosed." *Id.* at 836.

That is not the situation in the present case. The plaintiff injured his back. Early on, it was clear that the injury involved his intervertebral disc. He believed his condition was less severe at the time of the settlement than he believes it to be at the present time. He may have made a mistake but the mistake—if in fact it is one—concerns the extent and outcome of the injuries which are necessarily future rather than present facts. A litigant who signs a release and receives funds has "to take his chances that a properly diagnosed condition was the subject of an overly optimistic prognosis and that his injuries may be more serious and extensive than originally thought." *Id.* at 836.

### C. CLAIM OF FRAUD

■ Plaintiff next seeks to invalidate the release on the basis of fraud claiming the defendant intentionally neglected to advise him of the dire consequences on his future compensation by failing to obtain his employer's consent. Section 933(g) of the Longshore and Harbor Workers' Compensation Act ("LHWCA") provides a forfeiture mecha-

**2.** The release in pertinent part provides the following:

> The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed that the undersigned rely(ies) wholly

> upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefore and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

nism, so that "if a third-party claim is settled without the written approval of the worker's employer all future benefits are forfeited." *See* 33 U.S.C. § 933(g).

While the plaintiff may have made a mistake of judgment in settling his claim with defendant Cheramie without obtaining his employer's written approval, there is no evidence of fraud on the part of Cheramie. There is nothing in the record (or anything even claimed by the plaintiff) to the effect that Cheramie and the plaintiff discussed the plaintiff's compensation rights. The issue simply did not come up. Cheramie was certainly not in a fiduciary role *vis a vis* the plaintiff. Quite the contrary. Cheramie had been sued by the plaintiff and was in an adversarial relationship with him. The defendant had no duty to advise the plaintiff's employer of the settlement or to instruct the plaintiff to do so. The LHWCA places this responsibility on the employee—the plaintiff in this case—and no one else. *See* 33 U.S.C. § 933(g)(1).

### D.  *MUST EMPLOYER BE A PARTY TO A THIRD PARTY SETTLEMENT*

█ Finally, plaintiff suggests that since his employer was not a party to the settlement agreement, it was *void ab initio.* Under the LHWCA, an employee entitled to future compensation has the responsibility of advising his employer of settlement negotiations with a third-party tortfeasor and obtaining written approval of the settlement from his employer (and the employer's insurer) before the settlement is consummated. *See* 33 U.S.C. § 933(g). The prior approval provision is mandatory only as a condition of receiving future compensation benefits. In short, § 933(g) provides a forfeiture mechanism so that if a third party claim is settled without the employer's written permission, all future benefits are forfeited. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). The section obviously contemplates the possibility of a valid third-party settlement without employer consent since it provides a forfeiture of future compensation when this occurs.

Of course, the employer has an interest in recovering on its compensation lien and the employee and a third-party defendant may not "settle around" the employer and defeat its lien. *See Peters v. North River Ins.,* 764 F.2d 306 (5th Cir.1985); 1 Schoenbaum, *Admiralty and Maritime Law,* § 7–12 (2d ed.1994). Nevertheless, this lien may be protected without nullifying the settlement agreement. In the first place, the lien attaches to the settlement funds. If this is not feasible and the third party is at fault, the employer may have a claim directly against the third party defendant. *See Federal Marine Terminals, Inc. v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969); *Speaks v. Trikora Lloyd,* 838 F.2d 1436 (5th Cir.1988).

### CONCLUSION

For the foregoing reasons, the Court finds that the plaintiff has failed to demonstrate a genuine issue as to any material fact regarding the validity of the Release and that the defendant, Gilbert Cheramie Boats, Inc., is entitled to judgment as a matter of law dismissing with prejudice the claim(s) Kevin Rogers asserted against this defendant.

Accordingly, it is ordered that Cheramie's Motion for Summary Judgment is HEREBY GRANTED.