**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-30094
Summary Calendar

KEVIN ROGERS,

Plaintiff-Appellant,

VERSUS

TRICO MARINE OPERATORS, INC., ET AL,

Defendant,

GILBERT CHERAMIE BOATS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-2056-L, 96-CV-2930 & 97-CV-754-L)

December 2, 1998

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

PER CURIAM:[*]

Appellant ("Rogers") seeks to have summary judgment in favor of appellees ("Cheramie") reversed on the basis that release entered into by the parties should have been set aside on grounds

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

of mutual mistake.

## I.   Background and Procedural History

Kevin Rogers, a longshoreman, filed suit against various defendants seeking recovery for injuries sustained when the crew boat he was traveling aboard collided with a vessel owned by Gilbert Cheramie Boats, Inc. ("Cheramie").  Cheramie moved for summary judgment on the basis that Rogers's suit was barred by a release he had signed settling his claims against Cheramie for $10,000.  The district court granted Cheramie's summary judgment motion, finding that Rogers had "failed to demonstrate a genuine issue as to any material fact regarding the validity of the release."  The court entered partial final judgment under FED. R. CIV. P. 54(b) dismissing Rogers's complaint with prejudice as to Cheramie.  Rogers filed a timely notice of appeal.

 The district court summarized the undisputed facts relative to Rogers's injury.  On the evening of February 19, 1996, in foggy conditions, a crew boat Rogers was traveling aboard collided with a vessel owned by Cheramie.  At the time of the collision, Rogers was being ferried to an offshore platform where he served as a field supervisor.  Rogers had been asleep on a bench inside the crewboat and was thrown to the floor when the two vessels collided.  As a result of being thrown to the floor, Rogers suffered injuries to his lower back.

 On March 13, 1996, Rogers visited Ky's Chiropractic Clinic complaining of neck and back pain due to the accident.  An initial evaluation found a cervical and lumbar sprain/strain after which

Rogers returned to Ky's for chiropractic treatment on March 25, 1996. On March 29, 1996, Rogers visited Dr. David Reiss, his employer's physician, complaining of low back pain extending down his leg. Rogers underwent an MRI of the spine, which revealed a degenerative L4-5 disc and a bulging L5-S1 disc. Following the MRI, Rogers was referred to Dr. Gregor Hoffman, for orthopedic evaluation. Dr. Hoffman diagnosed Rogers as having a thoracic sprain/strain and lumbar sprain/strain with a degenerative disc.

Several days later, Rogers, unrepresented by counsel and without written approval of his employer, engaged in settlement discussions with Cheramie. On April 18, 1996, Rogers signed a release before a notary public and settled his claim against Cheramie for $10,000.

Notwithstanding the settlement, on June 17, 1996, Rogers filed the instant suit. Rogers was subsequently seen by Dr. Stuart Phillips, who diagnosed Rogers as having a central disc herniation, rather than just a sprain/strain, at the L4-5 intervertebral disc. In order to maintain his suit, Rogers has challenged the validity of the release on the basis of mutual mistakes made by the parties.

## II. Discussion

"This court reviews the grant of a summary judgment motion *de novo*, using the same criteria used by the district court in the first instance." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.1992). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED.

R. Cɪᴠ. P. 56(c).

The parties agree that Rogers's claim against Cheramie arises under general maritime law and that therefore federal law governs the validity of the release. *See Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir.1984). They do not agree as to which party has the burden of proof regarding validity of the release. The district court concluded that Rogers "must be treated as an ordinary employee and, since he is the one attacking the release, he must bear the burden of proving that the release is invalid." In arguing that the district court correctly decided this issue, Cheramie cites to *Mid-South Towing*, 733 F.2d at 392, which states that "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by mutual mistake under which both parties acted." Rogers however, argues that the burden is on Cheramie to prove the validity of the release. He relies on *Robertson v. Douglas Steamship Co.*, 510 F.2d 829, 835 (5th Cir.1975), in which this court stated that "[f]or purposes of determining the applicability of general maritime law, a longshoreman injured in the course of his duties stands in the same position as a seaman with respect to 'the traditional remedies of the sea.'" The party that sets up a seaman's release has the burden of showing "that it was executed freely, without deception or coercion, and that it was made by the seaman with full understanding of his rights." *Charpeniter v. Fluor Ocean Services, Inc.*, 613 F.2d 81, 84 (5th Cir.1980)(internal quotation and

**4**

citation omitted); *see also Robertson*, 510 F.2d at 835 n.4 ("the party who attempts to rely on a maritime release has the burden of proving its validity").  Here, the mere fact that Rogers was a passenger on a crew boat when his injuries occurred does not convince us that he should be entitled to the special status of a seaman.  *See Ketnor v. Automatic Power, Inc.*, 850 F.2d 236, 238 (5th Cir.1988)(holding that plaintiff that utilized boat merely for transportation to and from various rigs on which he worked, was "merely a passenger," and thus not entitled to seaman status).  We likewise "see no compelling reason to apply more stringent standards to longshoremen's releases for injuries sustained aboard ship than to those entered into by longshoremen and other workers for injuries sustained ashore."  *Capotorto v. Compania Sud Americana de Vapores, Chilean Line, Inc.*, 541 F.2d 985, 987 (2nd Cir.1976).  However, regardless of which party here bears the burden of proving the validity/invalidity of this release, Rogers's claims fail for other reasons.

Rogers ultimately seeks to have his release set aside for two separate reasons.  First, he contends that the parties were under a mutual mistake as to the nature of his injuries when he signed the release.  Thus, Rogers asserts, the release should be set aside because both parties based the settlement on the diagnosis of a cervical strain/sprain and not the later diagnosis of a herniated disc.

Roger's assertion is controlled by this court's decision in *Robertson v. Douglas Steamship Co.*, 510 F.2d 829 (5th Cir.1975), in

5

which we held:

> While it is true that a release should not be set aside for mutual mistake concerning the extent and outcome of injuries, which are necessarily future rather than present facts, it does not follow that a release should not be set aside for mutual mistake concerning the nature of the injuries, which is a present fact. The legal distinction must rest on the medical difference between diagnosis and prognosis.

*Id*. at 836. Here, we must therefore determine if the parties made a mutual mistake concerning only the extent and outcome of Rogers's injuries, or whether there was a mistake concerning the very nature of his injuries. On this issue, the *Robertson* Court went on to further hold:

> A longshoreman who signs a release may have to take his chances that a properly diagnosed condition was the subject of an overly optimistic prognosis and that his injuries may be more serious and extensive than originally thought. However, the law does not require him to take his chances when the diagnosis is itself erroneous and he is suffering from a disease *entirely different in nature* than that diagnosed.

*Id.* (emphasis added). In the case at bar, Rogers settled his claims fully aware that he was suffering from a spine injury. More precisely, he settled fully aware that he had an injured L4-5 disc. We find that any mistake made in this case was only to the extent and eventual outcome of Rogers's injuries. We do not believe that Rogers settled his claims on the basis of a condition entirely different in nature than that of which he was diagnosed. He took his chances that his injuries would not be more serious and extensive than originally thought. *See id.; Strange v. Gulf and South American Steamship Co., Inc.*, 495 F.2d 1235, 1237 (5th Cir.1974)(noting that the uncertainty of the eventual extent and

6

outcome of the injuries involved in a personal injury claim is the very thing that parties seek to foreclose by settling). Therefore, we hold that there was no mutual mistake in Rogers's diagnosis that would justify setting aside his release.

Second, Rogers contends that the parties' failure to obtain the approval of his employer prior to the settlement of his claim was a second mutual mistake which operated to void the release. For this assertion, Rogers relies on 33 U.S.C. 933(g)(1) of the Longshoremen's and Harbor Workers' Compensation Act ("the LHWCA"), which states that a worker must have the written approval of his employer if he desires to settle a claim with a third-party tortfeasor for less than the total compensation owed by the employer. *See also Peters v. North River Ins. Co. of Morristown, N.J.*, 764 F.2d 306, 311 (5th Cir.1985). The record reflects that Rogers's employer paid $11,083.86 in benefits to Rogers. Because the settlement with Cheramie was less than the compensation paid by Rogers's employer, Rogers argues that the release violated § 933(g)(1). A release executed in violation of § 933(g)(1) triggers the forfeiture mechanism of 933(g)(2). Consequently, Rogers's failure to notify his employer would result in the forfeiture of any future benefits, including medical benefits that he might have been entitled to under the LHWCA. *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 470 (1992). Accordingly, the very fact that this forfeiture mechanism exists defeats Rogers's contention that a release in violation of § 933(g) is *void ab initio*. We agree with the district court's reasoning that this section

**7**

"clearly contemplates the possibility of a valid third-party settlement without employer consent." *Rogers v. Trico Marine Assets, Inc.*, 969 F.Supp. 384, 389 (E.D. La.1997). Therefore, Rogers fails to persuade that the failure to obtain such approval constituted a mutual mistake that would void the release.

## III. <u>Conclusion</u>

For the foregoing reasons, we find that the district court was correct in granting summary judgment on behalf of appellee Cheramie. After a *de novo* review, we conclude that Rogers has failed to demonstrate any genuine issue of material fact on whether or not his release should be set aside on the basis of mutual mistake. Because appellee Cheramie was therefore entitled to judgment as a matter of law, we AFFIRM.