USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________
No. 98-1497 WILLIAM H. BRADY, Plaintiff, Appellant, v. THE CREDIT RECOVERY COMPANY, INC. AND LESLIE A. CLARK, Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Joseph L. Tauro, U.S. District Judge] ____________________ Before Torruella, Chief Judge, Bownes, Senior Circuit Judge, and Lynch, Circuit Judge. _____________________ Richard J. Rubin, with whom Yvonne W. Rosmarin was on brief,
for appellant. Alan I. Margolies for appellees. ____________________ November 18, 1998 ____________________ TORRUELLA, Chief Judge. Plaintiff William H. Brady
("Brady") filed this action against defendant The Credit Recovery
Company ("CRC" or "defendant") and its president and clerk
Leslie A. Clark ("Clark" or "defendant") to redress alleged
violations of the Fair Debt Collection Practices Act (the
"FDCPA"), 15 U.S.C. 1692-1692o, and of related state law
obligations. The district court dismissed Brady's FDCPA claim for
failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and
dismissed the remaining state law claims without prejudice for
lack of jurisdiction. In its memorandum and order, the district
court recited the standard governing 12(b)(6) motions to dismiss
but relied in part on materials outside of the pleadings. We
therefore treat the motion as one for summary judgment. SeeDominique v. Weld, 73 F.3d 1156, 1158 (1st Cir. 1996). We review a grant of summary judgment de novo, viewing
the facts in the light most favorable to the nonmovant,
plaintiff, see id., and conclude that the order of
dismissal/grant of summary judgment must be reversed. Accordingly, we remand this case for action consistent with this
opinion.
I. BACKGROUND Prior to 1990, Brady's then wife leased an apartment
and failed to pay $470 in rent. Brady never signed the lease in
question but was named in the lease as a tenant. In August 1990,
the landlord referred the Brady account to defendants for
collection of the unpaid rent. On September 4, 1990, defendants initiated the
collection process by sending Brady a letter requesting payment
of the debt. On September 13, Brady phoned Clark and explained
that he had never signed the lease in question, that his ex-wife
alone had signed the lease, and that therefore he had no
obligation to pay the unpaid rent. Clark told Brady to submit a
written letter to dispute the debt. Brady never put the dispute
in writing. Over the next few months, defendants sent Brady two
more dunning letters and made two phone calls to him, none of
which drew a response. In August 1991, CRC reported Brady's
alleged debt to various credit reporting agencies without also
reporting Brady's dispute. Five years later, in February 1996, Brady applied for a
mortgage to purchase a home. The mortgage company hired a credit
agency, First American Credit Services ("First American"), to
check Brady's credit history. Upon learning of Brady's bad
credit report, the credit agency called defendants to inquire
about the unpaid debt. As it had done in 1991, CRC again
reported the unpaid rent as Brady's debt without reporting its
disputed status. The mortgage company subsequently advised Brady
that his financing was in jeopardy because of the listing of the
rent as an outstanding debt on his credit report. Brady immediately contacted defendants and informed
them, once again, that he was not liable for the unpaid rent. Defendants again refused to remove the debt from Brady's credit
report. One month later, Brady's attorney contacted CRC's
attorney who, in turn, advised CRC to withdraw the bad credit
report. CRC promptly removed the unpaid rent from Brady's credit
report. Thereafter, Brady brought this suit alleging that
defendants violated the FDCPA by failing to inform First American
that Brady disputed the debt. Brady also brings pendent state
law claims under Mass. Gen. Laws ch. 93, 24, 50 and ch. 93A.
II. DISCUSSION We review de novo a district court's grant of summary
judgment. See Bethlehem Steel Export Corp. v. Redondo Constr.
Corp., 140 F.3d 319, 320 (1st Cir. 1998). Brady claims that defendants violated a provision of
the FDCPA, which proscribes debt collectors from making any
"false, deceptive or misleading representation[s] . . . in
connection with the collection of any debt." 15 U.S.C. 1692e. More specifically, Brady argues that defendants violated 1692e
by failing to inform First American of the disputed status of the
unpaid rent listed on his credit report. Section 1692e(8)
explicitly states that the failure of a debt collector to
disclose the disputed status of a debt constitutes a "false,
deceptive, or misleading representation." Id. 1692e(8). Defendants do not contest the facts. Rather,
defendants argue that the facts do not, as a matter of law, rise
to the level of "false, deceptive, or misleading
representation[s]" in violation of 1692e(8) because Brady never
disputed the debt in writing. This case thus turns on a narrow
question of statutory construction: Should 1692e(8) of the
FDCPA -- which on its face does not impose a writing requirement
-- be read to impose a writing requirement on a consumer who
wishes to dispute a debt? "In a statutory construction case, the beginning point
must be the language of the statute, and when a statute speaks
with clarity to an issue judicial inquiry into the statute's
meaning in all but the most extraordinary circumstance is
finished." Riva v. Commonwealth of Massachusetts, 61 F.3d 1003,
1007 (1st Cir. 1995) (quoting Estate of Cowart v. Nicklos
Drilling Co., 505 U.S. 469, 475 (1992)) (internal quotation marks
omitted). In other words, the court need not consult legislative
history and other aids to statutory construction when the words
of the statute neither create an ambiguity nor lead to an
unreasonable interpretation. Riva, 61 F.3d at 1007 (quotations
omitted). In searching a statute's text to determine
congressional intent, we attribute to words that are not defined
in the statute itself their ordinary usage, while keeping in mind
that meaning can only be ascribed to statutory language if that
language is taken in context. Id. (quotations omitted). Applying these tenets, we conclude that 1692e(8) does not
impose a writing requirement on a consumer who wishes to dispute
a debt. Because the FDCPA does not include the terms "dispute"
or "disputed debt" in the section devoted to definitions, see 15
U.S.C. 1692a, we look first to ordinary usage. In ordinary
English "dispute" is defined as a "verbal controversy" and
"controversial discussion." Webster's Third New International
Dictionary (3d ed. 1971). Clearly, the ordinary usage of
"dispute" does not contemplate a writing. See id. Defendants
argue that a writing requirement should be implied from other
sections of the statute and from context. We address these
arguments. First, defendants argue that we need not resort to
ordinary usage because the FDCPA does in fact define the term
"disputed debts." In support of this contention, defendants
point to 1692g(b) which is captioned "disputed debts." See 15
U.S.C. 1692g(b). Although we cannot assume that 1692g(b)
defines this term simply because of its caption, see Pub. L. 90-
321, 502 (May 29, 1968), 82 Stat. 146, 147, reported as a note
following 15 U.S.C. 1601 (forbidding reliance on captions),
defendants contend that the text of 1692g(b) provides a
definition of "disputed debts" that carries over to 1692e(8). We disagree. As stated above, we must keep in mind that meaning can
only be ascribed to statutory language if that language is taken
in context. See Riva, 61 F.3d at 1007. Viewing the language of 1692e(8) in the context of other provisions of the FDCPA, it
makes logical sense to conclude that the meaning of "disputed
debt" in 1692g(b) does not carry over to 1692e(8). First, the fact that other sections of the FDCPA --
like 1692g(b) -- explicitly impose a writing requirement
suggests that Congress's omission of such a requirement in 1692e(8) was not inadvertent. Moreover, a closer examination of
the purposes and effects of the two provisions further supports
our conclusion that Congress intended to require a writing under 1692g(b) but not under 1692e(g). Under section 1692g(b) a consumer must dispute a debt
in writing, within an initial thirty-day period, in order to
trigger a debt validation process. See 15 U.S.C. 1692g(b). Once a consumer exercises this right, a debt collector must cease
all further debt collection activity until it complies with
various verification obligations. See id. Section 1692g(b) thus
confers on consumers the ultimate power vis-a-vis debt
collectors: the power to demand the cessation of all collection
activities. See id. Recognizing the broad consumer power
granted by this provision, Congress expressly conditioned its
exercise on the submission of written notification within a
limited thirty-day window. See id. In contrast, 1692e(8) does not affect debt collection
practices at all. See 15 U.S.C. 1692e(8). Instead, 1692e(8)
merely requires a debt collector who knows or should know that a
given debt is disputed to disclose its disputed status to persons
inquiring about a consumer's credit history. See id. Given the
much more limited effect of this provision, Congress's decision
not to condition its exercise on the submission of written
notification makes logical sense. Our conclusion that 1692g(b) does not define
"disputed debt" for the entire FDCPA is further supported by the
language of 1692e(8) itself. If the meaning of "disputed debt"
as used in 1692g(b) carried over to 1692e(8), then, in order
to trigger the limited protection of 1692e(8), a consumer would
be required to submit written notice to a debt collector within
the initial thirty-day period. See 15 U.S.C. 1692g(b). But
the plain language of 1692e(8) requires debt collectors to
communicate the disputed status of a debt if the debt collector
"knows or should know" that the debt is disputed. See 15 U.S.C. 1692e(8). This "knows or should know" standard requires no
notification by the consumer, written or oral, and instead,
depends solely on the debt collector's knowledge that a debt is
disputed, regardless of how or when that knowledge is acquired. See id. Applying the meaning of "disputed debt" as used in 1692g(b) to 1692e(8) would thus render the provision's "knows
or should know" language impermissibly superfluous. See United
States v. Bailey, 516 U.S. 137, 145 (1995) (quoting Ratzlaf v.
United States, 510 U.S. 135, 140-41 (1994) ("Judges should
hesitate . . . to treat [as surplusage] statutory terms in any
setting . . . ."). III. CONCLUSION We therefore conclude that 1692e(8) does not impose a
writing requirement on consumers who wish to dispute a debt. For
the foregoing reasons, we reverse the district court's order of
dismissal/grant of summary judgment and remand this case for
action consistent with this opinion.