# Prioritizing Programs to Exempt Small Businesses from Competition in Federal Contracts

The Small Business Administration's regulations governing the interplay among the Historically Underutilized Business Zone Program, the 8(a) Business Development Program, and the Service-Disabled Veteran-Owned Small Business Concern Program constitute a permissible construction of the Small Business Act.

The Small Business Act does not compel the prioritization of awards under the Historically Underutilized Business Zone Program over those under the 8(a) Business Development Program and the Service-Disabled Veteran-Owned Small Business Concern Program. The Small Business Administration's regulations permissibly authorize contracting officers to exercise their discretion to choose among these three programs in setting aside contracts to be awarded to qualified small business concerns.

The Office of Legal Counsel's conclusion that the Small Business Administration's regulations are reasonable is binding on all Executive Branch agencies.

August 21, 2009

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
SMALL BUSINESS ADMINISTRATION

The Small Business Act ("Act"), as amended, exempts certain classes of small businesses from the general requirement that federal contracts to procure goods and services be awarded on the basis of full and open competition. *See* Act of July 30, 1953, Pub. L. No. 83-163, 67 Stat. 230 (codified as amended at 15 U.S.C.A. §§ 631–657p (West 2009)).[1] In particular, the Act establishes various programs, administered by the Small Business Administration ("SBA"), to assist qualifying small businesses in obtaining federal contracts by exempting them, in certain circumstances, from the degree of competition that would otherwise be required. At issue here is the permissibility of SBA's regulations governing the interplay among three such programs: the Historically Underutilized Business Zone ("HUBZone") Program, the 8(a) Business Develop-

---

[1] "Full and open competition" in the context of federal procurement means "that all responsible sources are permitted to submit sealed bids or competitive proposals on the procurement." 41 U.S.C. § 403(6) (2006); *see also* 41 U.S.C.A. § 253 (West Supp. 2009) (requiring full and open competition in the conduct of procurements for property or services, except under certain circumstances as provided).

ment Program, and the Service-Disabled Veteran-Owned ("SDVO") Small Business Concern Program.

Under SBA's regulations, federal contracting officers are given substantial discretion to consider and designate contracts for either the HUB-Zone, 8(a), or SDVO Program without having to prioritize one program above the others. This aspect of the regulations—which, according to SBA, effectively establishes "parity" among the three programs—has been called into question by a pair of recent Government Accountability Office ("GAO") bid protest decisions.[2] In these decisions, GAO rejected SBA's approach and ruled instead that the Act mandates that priority be given to the HUBZone Program when certain statutory conditions are met. As a result, according to GAO, contracting officers must set aside federal contracts to qualified HUBZone small businesses, when two or more such businesses can submit fair market bids, before they can set aside such contracts for award to small businesses under the 8(a) or SDVO Programs.

You have asked for our views on whether GAO was correct to conclude that the Act compels such prioritization of the HUBZone Program. *See Letter for David Barron, Acting Assistant Attorney General, Office of Legal Counsel, from Sara D. Lipscomb, General Counsel, Small Business Administration*, at 2 (July 1, 2009) ("Lipscomb Letter"). You have further asked whether, if the Act can be read not to require such prioritization, GAO has authority to invalidate SBA's regulations. *See id.* Having carefully reviewed the relevant legal materials, including SBA's own views, we conclude that the Act does not compel SBA to prioritize the HUBZone Program in the manner GAO determined to be required. In our view, SBA's regulations permissibly authorize contracting officers to exercise their discretion to choose among the three programs in setting aside contracts to be awarded to qualified small business concerns.[3] Further, in

---

[2] *See Mission Critical Solutions*, B-401057, 2009 WL 1231855 (Comp. Gen. May 4) ("*MCS*"), *recons. denied*, B-4010572 (Comp. Gen. July 6, 2009); *International Program Group, Inc.*, B-400278, B-400308, 2008 WL 4351134 (Comp. Gen. Sept. 19) ("*IPG*"). *recons. denied*, B-400278.2 *et al.* (Comp. Gen. Oct. 24, 2008). The Comptroller General's authority to review bid protests concerning alleged violations of a procurement statute or regulation is set forth in 31 U.S.C §§ 3551–3557 (2006).

[3] Our conclusion regarding these SBA regulations addresses only whether they constitute a permissible interpretation of the Act.

accord with this Office's longstanding precedent, GAO's decisions are not binding on the Executive Branch.

## I.

The underlying legal issue ultimately turns on a relatively straightforward question of statutory interpretation, but it arises out of a complicated statutory and regulatory framework. Accordingly, we first review the key statutory provisions that establish these three programs.

## A.

The term "HUBZone" refers to economically disadvantaged or distressed areas located within one or more qualified census tracts, nonmetropolitan counties, Indian reservations, or base closure areas. *See* 15 U.S.C. § 632(p)(1)–(2) (2006). Established by the Small Business Reauthorization Act of 1997, Pub. L. No. 105-135, § 602(b)(1)(B), 111 Stat. 2592, 2627 (codified as amended at 15 U.S.C. § 657a(a) (2006)), the HUBZone Program provides federal contract assistance to qualified small business concerns operating within a HUBZone through contracts awarded on a sole source basis, contracts awarded on the basis of competition restricted to HUBZone concerns, or a ten-percent bid adjustment for contracts awarded on the basis of full and open competition. *Id.* § 657a(a)–(b).

The "restricted competition" provision at issue in the GAO decisions states that:

> Notwithstanding any other provision of law . . . a contract opportunity shall be awarded pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price.

*Id.* § 657a(b)(2)(B). The conditions set forth in this provision—"a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers" and "that the award can be made at a fair market price"—are commonly referred to as "the rule of two." When the rule of two is met, the statute provides that the award must be made on the

basis of competition restricted to qualified HUBZone small businesses. This provision closely resembles in language and structure the restricted competition provision found in the earlier-enacted 8(a) Program. *See id.* § 637(a)(1)(D) (2006). The HUBZone Program also provides, in the alternative, that "a contracting officer may award sole source contracts under this section to any qualified HUBZone small business concern" upon a determination, *inter alia*, that there is no "reasonable expectation that two or more qualified HUBZone small business concerns will submit offers for the contracting opportunity." *Id.* § 657a(b)(2)(A).

## B.

The 8(a) Program, established by amendment to the Act on October 24, 1978, Pub. L. No. 95-507, § 202, 92 Stat. 1757, 1761 (codified as amended at 15 U.S.C. § 637), "promote[s] the business development of small business concerns owned and controlled by socially and economically disadvantaged individuals," *id*. § 631(f)(2)(A) (2006), defined as "those who have been subjected to racial or ethnic prejudice or cultural bias because of their identity as a member of a group without regard to their individual qualities," *id.* § 637(a)(5), and "whose ability to compete in the free enterprise system has been impaired due to diminished capital and credit opportunities as compared to others in the same business area who are not socially disadvantaged." *Id.* § 637(a)(6)(A).

The 8(a) Program promotes socially and economically disadvantaged small business development by, among other things, reserving certain contracts with federal agencies for administration and award by SBA to eligible 8(a) Program participants. The 8(a) authorizing statute provides, *inter alia*, that "[i]t shall be the duty of [SBA] and it is hereby empowered, whenever it determines such action is necessary or appropriate," to enter into procurement contracts with the federal government or any department, agency, or officer thereof, *id*. § 637(a)(1)(A), and then "to arrange for the performance of such procurement contracts" by awarding them to eligible 8(a) participants when certain conditions are met, *id.* § 637(a)(1)(B)–(C).[4] The statute explicitly states that contracting officers

---

[4] SBA has promulgated regulations that permit it to delegate its 8(a) contract execution and review authority to procuring departments and agencies. *See* 13 C.F.R. §§ 124.501(a), 124.503, 124.512 (2009).

shall retain "discretion to let such procurement contract[s]" to SBA for the 8(a) Program. *Id.* § 637(a)(1)(A).

The statute further provides that SBA's authority to award an 8(a) contract is conditioned on the requirement that the award be made as a result of an offer submitted in response to a published solicitation about "a competition conducted pursuant to subparagraph (D)." *Id.* § 637(a)(1)(C)(i). Subparagraph (D)(i), in turn, provides:

> A contract opportunity offered for award pursuant to this subsection shall be awarded on the basis of competition restricted to eligible Program Participants if . . . there is a reasonable expectation that at least two eligible Program Participants will submit offers and that award can be made at a fair market price.

*Id.* § 637(a)(1)(D)(i)(I).

## C.

The SDVO Program was established by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 308, 117 Stat. 2651, 2662 (codified at 15 U.S.C. § 657f (2006)), and provides for federal contract assistance to qualified service-disabled veteran-owned small businesses through sole source and restricted competition awards. *Id*. § 657f.

The conditions set forth in the SDVO statute for the award of sole source contracts are the same as in the HUBZone statute. *Compare id*. § 657f(a) *with id.* § 657a(b)(2)(A). However, unlike the HUBZone and 8(a) provisions, the SDVO statute does not mandate the award of contracts through restricted competition even "if the contracting officer has a reasonable expectation that not less than 2 small business concerns owned and controlled by service-disabled veterans will submit offers and that the award can be made at a fair market price." *Id.* § 657f(b). Instead of requiring that a contract opportunity "shall be awarded" through restricted competition in such circumstances, the SDVO statute provides that the award "may" be made through such competition if the rule of two is met. *Compare id*. ("a contracting officer may award") *with id*. § 637(a)(1)(D)(i) ("a contract opportunity . . . shall be awarded") *and id*. § 657a(b)(2)(B) ("a contract opportunity shall be awarded").

## D.

It is against this legislative background that SBA issued its regulations to guide contracting officers in making the determination whether and when to set aside a contract for the HUBZone, 8(a), or SDVO Program. Congress delegated broad authority to SBA to carry out the policies and purposes of the Act. *See generally id*. §§ 633(a), 634(b), 644(g) (2006). The relevant parts of the HUBZone regulations that you have asked us to review in light of the GAO decisions direct contracting officers first to determine whether the contract is a follow on to one already being performed by an 8(a) participant, has already been accepted for the 8(a) Program by SBA, or would be performed by a federal prison workshop or participating non-profit agency for the blind or severely disabled.[5] *See* 13 C.F.R. §§ 126.605 and 126.607 (2009). If the contract is still available, the regulations state that a contracting officer shall then choose among the HUBZone, 8(a), or SDVO Programs and "set aside the requirement for HUBZone, 8(a) or SDVO [] contracting before setting aside the requirement as a small business set-aside." *Id.* § 126.607.

The SDVO regulations implicated by the GAO decisions are operatively the same as the HUBZone regulations. *Compare id*. §§ 126.605 & 126.607 *with id*. §§ 125.18 & 125.19. A parallel provision also exists in the 8(a) regulations.[6] *See id*. § 124.503(j).

---

[5] *See* 18 U.S.C. § 4124 (2006) (requiring purchase of prison-made products by all federal departments and agencies); 41 U.S.C. § 48 (2006) (requiring governmental purchases from qualified nonprofit agencies for the blind or severely disabled); *see also* 15 U.S.C. § 657a(b)(4) (prioritizing procurement awards to prison, blind, and severely-disabled entities over HUBZone awards); *id.* § 657f(c) (prioritizing procurement awards to prison, blind, and severely-disabled entities over SDVO awards).

[6] The SDVO and 8(a) regulations provide that the contracting officer "*should consider* setting aside the requirement" for 8(a), HUBZone, or SDVO participation "*before considering*" setting it aside for other small business programs. 13 C.F.R. §§ 125.19(b), 124.503(j) (2009) (emphasis added). Thus, although the SDVO and 8(a) regulations contain discretionary language not found in the corresponding HUBZone regulation, they nevertheless place the three programs on equal footing and prioritize their consideration before small businesses generally. In this way, they are consistent with the HUBZone regulations and provide uniform guidance to contracting officers regarding the interplay among the programs at issue. *See* 70 Fed. Reg. 51243, 51245 (Aug. 30, 2005) ("To make the HUBZone regulations consistent with SBA's recently published SDV regulations, SBA is . . . revising § 126.607 to incorporate contracting preferences for HUBZone, 8(a)

The SBA's regulations do not expressly provide for parity of treatment among the 8(a), HUBZone, or SDVO Programs. *See id.* §§ 124.503(j), 125.19(b), and 126.607(b). Rather, by their plain terms, the regulations require that contracting officers prioritize these programs *collectively* by giving consideration to the group of them before a contracting officer may set aside an opportunity for small businesses generally and before the contracting officer may make the contract otherwise available. *See* Lipscomb Letter at 6–7 ("The regulations themselves do not establish an order of precedence between an award under the HUBZone, SDVO SBC, or 8(a) BD programs."). The regulations do not, therefore, single out one program for the kind of prioritization over the other two that the GAO decisions conclude is mandated under the HUBZone statute. It is in this sense that, as the SBA puts it, the regulations "provide[] for parity between the HUBZone, SDVO SBC and 8(a) BD programs." *Id*. at 7.

## II.

Having reviewed the language, context, and history of the relevant portions of the Act, we conclude that SBA's regulations implementing the HUBZone Program are based on a permissible interpretation of the Act. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); *see also Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740–41 (1996) ("We accord deference to agencies under *Chevron* . . . because of a presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency."). The GAO decisions reached the opposite conclusion based on what GAO considered the unambiguous language of the HUBZone Program's restricted competition provision. *See MCS*, 2009 WL 1231855, at *2–4; *IPG*, 2008 WL 4351134, at *4. GAO concluded that "the clear language" of this provision in the HUBZone statute, which uses the term "shall" with respect to the award of contracts, stood in marked contrast to the Act's use of the discretionary term "may" in the SDVO Program provision, *IPG*, 2008 WL 4351134, at *3–4 (citing 15 U.S.C. § 657f(b)), and its use of other discretionary language in the 8(a) Program, which authorizes a contracting

and SDV over small business set-asides. This change will ensure consistent guidance throughout 13 CFR Chapter 1.").

officer "'in his discretion to let such procurement contract to [SBA].'" *MCS*, 2009 WL 1231855, at *2 (quoting 15 U.S.C. § 637(a)(1)(A)). Because Congress used mandatory language with respect to the award of contracts pursuant to the HUBZone Program and discretionary language with respect to the other two programs, GAO reasoned that Congress intended to give the HUBZone Program priority over these other contract assistance programs. The Ninth Circuit, we note, has expressed a similar view of the "mandatory" versus "discretionary" language in the HUBZone and 8(a) Programs. *See Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145, 1149 (9th Cir. 2006) ("*CMI*").[7]

We conclude that the HUBZone provision does not unambiguously direct contracting officers to reserve every available contract opportunity for HUBZone small businesses whenever the rule of two is met. Rather, the text of the HUBZone provision may be fairly read as mandating only that a contract opportunity—already set aside for HUBZone small businesses in the discretion of a contracting officer—be awarded on the basis of restricted competition, and not as a sole source award, if the rule of two is met. So read, the provision, instead of simply permitting restricted competition for qualified HUBZone bidders, actually mandates such

---

[7] *CMI* involved a challenge to an earlier HUBZone regulation, no longer in effect, that directed contracting officers, *inter alia*, to give priority to eligible 8(a) participants over HUBZone concerns. The regulation provided, however, that contracting officers otherwise "must set aside the requirement for competition restricted to qualified HUBZone" small businesses if the rule of two is met. 13 C.F.R. § 126.607(c) (current through Dec. 28, 2005). The appellant, a small business concern that did not qualify for either the 8(a) or HUBZone Program, challenged this last aspect of the old regulation. In defending this regulation, the government advanced a reading of the HUBZone provision as mandatory, but inapplicable to the 8(a) Program. Citing legislative history, the government argued the HUBZone statute is "reasonably read as showing that Congress intended that there be parity between the Section 8(a) Program and the HUBZone Program." Brief for Appellees at 7, *Contract Mgmt., Inc. v. Rumsfeld*, 434 F.3d 1145 (9th Cir. 2006) (No. 04-15049).

The court ruled in the government's favor. The court compared what it viewed as the "unequivocal" terms of the HUBZone statute with the discretionary terms of the 8(a) set-aside provision and concluded that SBA's old regulation implementing the HUBZone Program "properly accord[ed] with congressional intent under the Small Business Act." 434 F.3d at 1147. The court noted that such a reading of the HUBZone statute was not compelled. *See id.* at 1149 n.8. In 2005, after establishment of the SDVO Program, SBA promulgated the current regulations replacing those reviewed by the *CMI* court. *See* 13 C.F.R. § 126.607.

competition. In other words, a contracting officer who uses discretion to set aside a contract for the HUBZone Program has no choice but to award a HUBZone contract on the basis of restricted competition once the rule of two is met. But, so read, the HUBZone provision does no more than compel restricted competition rather than a sole source award. It does not go further and require the prioritization of the HUBZone Program itself, leaving contracting officers with no discretion to set aside contracts for the other SBA programs whenever the HUBZone provision's rule of two is met.

The most basic reason we reach this conclusion is that the text of the HUBZone statute, on its own terms, does not clearly direct a contracting officer to reserve any and all procurement contracts for HUBZone small businesses whenever the rule of two is met. *See* 15 U.S.C. § 657a(b)(2)(B). The statute uses the mandatory phrase "shall be awarded" after the noun "contract opportunity," but the sentence does not stop there. It goes on to say "pursuant to this section"—i.e., under the HUBZone Program. *Id*. This qualification permits the HUBZone provision to be read as stating that contracts awarded "pursuant to this section" are subject to the enumerated conditions, but it does not compel a reading that all contract opportunities in the government must be awarded to the HUBZone Program whenever the enumerated conditions are met. Indeed, a contrary reading would implicate the canon of construction that discourages statutory interpretation that would render language mere surplusage. *See, e.g.*, *Clark v. Arizona*, 548 U.S. 735, 755 n.24 (2006) (recognizing "usual rule of statutory construction" to "giv[e] effect, if possible, to every clause and word of a statute") (internal quotations and citations omitted). In GAO's interpretation, it is not clear what independent meaning the "pursuant to this section" language would have.

Our conclusion is also consistent with another important section of the HUBZone statute, which provides that contracting officers "may award sole source contracts under this section" to any qualified HUBZone small business if the rule of two *cannot* be met. 15 U.S.C. § 657a(b)(2)(A). Again, the conditions set forth by this provision need only apply to contracts intended for award "under this section," i.e., under the HUBZone Program. The mandatory "shall" in the restricted competition provision can fairly be read, in connection with the discretionary "may" in the sole source provision, simply as a direction to contracting officers that within

the HUBZone Program there is a clear priority given to competition, albeit restricted, over sole source contract awards.

Such a construction of the HUBZone restricted competition provision is further supported by consideration of still another provision in the HUB-Zone statute, which expressly prioritizes the award of contracts to prison workshops and nonprofit agencies for the blind and severely-disabled over HUBZone small businesses. *See* 15 U.S.C. § 657a(b)(4) ("A procurement may not be made from a source on the basis of a preference [provided in the HUBZone statute], if the procurement would otherwise be made from a different source under section 4124 or 4125 of title 18 or the Javits-Wagner-O'Day Act (41 U.S.C. 46 et seq.)."). Whereas this provision clearly establishes the priority of these other contracting preferences, the HUBZone statute contains no express reference to the HUB-Zone Program's priority over SBA's other contract assistance programs.

Of course, the language of the HUBZone provision should be construed in the context of the provisions governing the other two SBA programs at issue. For that reason, we have considered whether the discretionary language in the 8(a) and SDVO statutes compels the conclusion that the HUBZone statute (with its mandatory language) requires that the HUB-Zone Program be given priority among the three programs. In our view, there are several reasons why it does not.

First, the 8(a) provision actually does contain mandatory language. Indeed, its restricted competition provision employs virtually the same mandatory language as the HUBZone provision. *Compare* 15 U.S.C. § 637(a)(1)(D)(i) ("A contract opportunity offered for award pursuant to this subsection shall be awarded on the basis of competition restricted to eligible Program Participants if"), *with id*. § 657a(b)(2)(B) ("[A] contract opportunity shall be awarded pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if").[8] In both instances, a contract opportunity "shall be awarded" on the

---

[8] The 8(a) restricted competition provision predates the HUBZone provision by nine years. *Compare* Business Opportunity Development Reform Act of 1988, Pub. L. No. 100-656, § 303, 102 Stat. 3853, 3868, *with* Small Business Reauthorization Act of 1997, Pub. L. No. 105-135, § 602(b)(1)(B), 111 Stat. 2592, 2627. When the 8(a) Program was originally established in 1978, all 8(a) contracts could be awarded on a sole-source basis. *See* Amendments to the Small Business Investment Act of 1958, Pub. L. No. 95-507, § 202, 92 Stat. 1757, 1761 (1978). As part of a comprehensive reassessment of the 8(a)

basis of restricted competition if the applicable conditions are met. Where Congress uses the same language in similarly structured provisions within the same Act, it may be presumed that the language has the same meaning in each instance. *See, e.g.*, *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) (recognizing "the basic canon of statutory construction that identical terms within an Act bear the same meaning"). At the very least, the use of this mandatory language in both the 8(a) and HUB-Zone provisions makes it difficult to argue that the HUBZone provision unambiguously mandates that HUBZone awards be given priority over 8(a) awards.

Second, the 8(a) provision clearly applies only to "[a] contract opportunity offered for award pursuant to this subsection"—in other words, under the 8(a) Program. 15 U.S.C. § 637(a)(1)(D)(i). The mandate that such contracts "shall be awarded" on the basis of restricted competition does not extend to contract opportunities that exist outside of the 8(a) Program. Given the similarity just discussed between the 8(a) and HUB-Zone provisions, it is reasonable to read the phrase "pursuant to this section" in the HUBZone statute to function the same way as the comparable language contained in 8(a)—to limit the provision's application only to a "contract opportunity" already set aside for award pursuant to the HUBZone Program.

Admittedly, the 8(a) and HUBZone restricted competition provisions are not phrased in exactly the same way. As noted, the former provides that "[a] contract opportunity *offered for award pursuant to this subsection* shall be awarded on the basis of competition," *id*. § 637(a)(1)(D)(i) (emphasis added), whereas the latter provides that "a contract opportunity shall be awarded *pursuant to this section* on the basis of competition," *id.* § 657a(b)(2)(B) (emphasis added). But this slight difference in word order between the two provisions may fairly be read to reflect the fact that the 8(a) statute, unlike the HUBZone statute, explicitly provides for a means

---

Program in 1988, Congress amended the Act to require that 8(a) contracts be awarded on the basis of restricted competition if certain conditions are met. *See* Pub. L. No. 100-656, § 303, 102 Stat. at 3868. Concerned about the success of the 8(a) Program, Congress provided three principal reasons for introducing competition, albeit restricted, to the program: "such competition will advance the business development objectives of the [8(a)] program; improve the distribution of contracts; and help avoid programmatic abuses." H.R. Rep. No. 100-460, at 28 (1987).

by which contracts will be "offered for award pursuant to this subsection." *Id*. § 637(a)(1)(D)(i).

Under the 8(a) statute, SBA is "empowered" to approach contracting officers in other agencies and certify that an available contract should be awarded under the 8(a) Program. *Id*. § 637(a)(1)(A). The discretionary language included in the 8(a) statute that GAO emphasized appears in this portion of the statute. Once SBA certifies that it is "competent and responsible" to perform a contract with a particular agency, the agency contracting officer "shall be authorized in his discretion to let such procurement contract" to SBA. *Id*. But this language can reasonably be read in a way that is consistent with SBA not having to give the HUBZone Program priority over the 8(a) Program. Because the 8(a) Program is a business development program to promote the ability of its participants to succeed as small business concerns, one aspect of this program is that the statute empowers SBA affirmatively to procure contracts for award to 8(a) participants. The discretionary language found in this same provision of the 8(a) statute may be read as an offset to this expansive SBA authority by reserving another agency's ability not to accede to SBA's certification. Because the HUBZone Program provides contract assistance but is not a more comprehensive business development program, there is no such authority provided in the HUBZone statute for SBA to solicit contracts on behalf of HUBZone concerns. Accordingly, the lack of an express reservation of a contracting officer's discretion to decline a HUBZone designation need not be construed to compel prioritization of the HUBZone Program.

There is also no basis for concluding that the discretionary language in the SDVO provision, *see id*. § 657f(b), requires the conclusion that the HUBZone Program must have priority. As noted above, the HUBZone provision includes discretionary language as well, in the award of sole source contracts. The inclusion of the discretionary term "may" in both the sole source and restricted competition provisions of the SDVO statute can reasonably be read, in contrast to the HUBZone statute, not to require the statutory prioritization of restricted competition over sole source awards as the means of contracting assistance to SDVO small business concerns.

Finally, it is true that the HUBZone provision is prefaced with the phrase "Notwithstanding any other provision of law," but the appearance

of that phrase does not establish a prioritization of its own force. *Id.* § 657a(b)(2). As we have noted previously, such "notwithstanding" phrases are best read simply to qualify the substantive requirement that follows. *See* Memorandum for Andrew J. Pincus, General Counsel, Department of Commerce, from Randolph D. Moss, Acting Assistant Attorney General, Office of Legal Counsel, *Re: The Effect of 8 U.S.C.A. § 1373(a) on the Requirement Set Forth in 13 U.S.C. § 9(a) That Census Officials Keep Covered Census Information Confidential* at 7 (May 18, 1999). Here, as we have noted, the HUBZone provision is at least ambiguous as to whether its substantive effect is to mandate that all contracts be set aside for its program and then subject, pursuant to the rule of two, to restricted competition; or whether it is instead intended to subject, pursuant to the rule of two, restricted competition only to those contracts that have been set aside for the HUBZone Program in the exercise of the contracting officer's discretion. If the latter interpretation is a permissible one, as we believe it is, then the "notwithstanding" clause simply ensures that no other provision of law countermands a contracting officer's discretion to make a sole source, restricted competition, or other contract award by means of assistance to qualified HUBZone small businesses pursuant to the requirements contained in the HUBZone statute.

### III.

We find further support for our position in the larger statutory framework of the Act incorporating all three of the SBA programs at issue. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (in considering the meaning of the statutory text, the particular statutory provision should not be viewed in isolation; "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context . . . . It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also Proposed Agency Interpretation of "Federal Means-Tested Public Benefit[s]" Under Personal Responsibility and Work Opportunity Reconciliation Act of 1996*, 21 Op. O.L.C. 21, 23 (1997) ("[I]t is well-established that a provision in one Act of Congress should be read in conjunction with other relevant statutory provisions and not in isolation."). As discussed below, a reading

of the HUBZone provision that does not compel prioritization comports with the policies and purposes set forth in the Act and other specific provisions that were amended with and after the 1997 reauthorization establishing the HUBZone Program.

First, a construction of the statute that does not mandate HUBZone Program priority furthers Congress's stated policy that "small business concerns owned and controlled by service-disabled veterans, qualified HUBZone small business concerns, [and] small business concerns owned and controlled by socially and economically disadvantaged individuals . . . shall have the maximum practicable opportunity to participate in the performance of contracts let by any Federal agency." 15 U.S.C. § 637(d)(1); *see also id.* §§ 631(f)(1)(E), 637(d)(10). Congress required that a clause stating this policy "shall be included" in virtually every government procurement contract. *See id.* § 637(d)(2). In listing in the policy all of the covered classes of small business concerns, Congress did not in any way distinguish among them. Instead, the text does not disturb the discretion SBA and the agencies have to ensure that all of the covered small business concerns "have the maximum practicable opportunity" to secure federal contracts. Had Congress clearly intended to prescribe some order of priority among these SBA programs, Congress could have more directly adopted such a policy.

Second, this construction of the HUBZone statute furthers achievement of government-wide goals required by the Act. *See id.* § 644(g)(1). The Act prescribes that the "goal for participation by small business concerns shall be established at not less than 23 percent of the total value of all prime contract awards for each fiscal year." *Id.* Furthermore, government-wide participation goals "shall be established" at not less than 3 percent each for HUBZone and SDVO small business concerns and not less than 5 percent for socially and economically disadvantaged small businesses. *Id.* Each agency, in turn, must establish its own goal "that presents . . . the maximum practicable opportunity" for the small business concerns qualified under the various SBA programs "to participate in the performance of contracts let by such agency." *Id.* In total, the "cumulative annual prime contract goals for all agencies" must "meet or exceed" the established minimum annual government-wide goal. *Id.* Congress did not prescribe for HUBZone concerns the highest minimum participation goal among the various SBA programs and it left to agency discretion how to achieve its

set goals. An interpretation of the HUBZone statute that does not compel a contract's award to a qualified HUBZone concern whenever the rule of two is met advances the achievement of the goals set forth for the other SBA programs and preserves the balance among the various programs established by the goaling provision of the Act.

## IV.

Such a reading of the HUBZone statute also comports with congressional intent as reflected in legislative history. The legislative history can fairly be interpreted to show that Congress did not intend, through enactment of the HUBZone statute, to require the award of available contracts to qualified HUBZone concerns over 8(a) participants.

The HUBZone Program was introduced in 1997 as part of the Senate version of the Small Business Reauthorization Act. *See* Small Business Reauthorization Act of 1997, S. 1139, 105th Cong. tit. VI (as reported by S. Comm. on Small Business, S. Rep. No. 105-62, Aug. 19, 1997). The bill that the Senate Committee on Small Business unanimously voted to report contained an amendment with "parity" language making clear that the HUBZone Program did not interfere with the discretion of a contracting officer to designate a procurement contract for the 8(a) Program.[9] *See* S. 1139, 105th Cong. § 31(b)(5) (as reported by S. Comm. on Small Business, S. Rep. No. 105-62, Aug. 19, 1997). Right after a "Subordinate Relationship" provision setting forth the priority to be afforded to the prison industries, blind, and severely-disabled preference programs, the amendment provided, in a subsection entitled "Parity Relationship," that the HUBZone assistance provisions of the bill "shall not limit the

---

[9] At the time the bill was reported, the restricted competition provision of the HUBZone Program tracked even more closely the restricted competition provision in the 8(a) Program: "Subject to paragraph 3 [the sole source award provision], a contract opportunity offered for award pursuant to this section shall be awarded on the basis of competition restricted to qualified HUBZone small business concerns, if there is a reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that award can be made at a fair market price." S. 1139, § 602(b)(1)(B), sec. 31(b)(B)(2) (1997); 143 Cong. Rec. 18,117. There is no explanation in the legislative history for the subsequent edit to this provision. But as discussed above, accounting for the substantive differences between the 8(a) and HUBZone Programs as enacted, the two slightly different formulations can be read functionally to operate the same way.

discretion of a contracting officer to let any procurement contract to [SBA] under section 8(a)." 143 Cong. Rec. 18,118 (1997). It further provided that "[n]otwithstanding section 8(a), [SBA] may not appeal an adverse decision of any contracting officer declining to let a procurement contract to the Administration, if the procurement is made to a qualified HUBZone small business concern on the basis of a preference [set forth in the bill]." *Id.* The Committee's report explained that the proposed HUB-Zone Program was "not designed to compete with SBA's 8(a) Program," and that the "parity" provision was simply intended to "give[] the procuring agency's contracting officer the flexibility to decide whether to target a specific procurement requirement for the HUBZone Program or the 8(a) Program." S. Rep. No. 105-62, at 26 (1997). The bill, with its parity provision intact, passed the Senate. *See* S. 1139, 105th Cong. § 31(b)(5) (as passed by Senate, Sept. 9, 1997).

When the bill reached the House of Representatives, the House struck everything after the enacting clause and substituted the provisions of a competing House version that omitted the entirety of the HUBZone Program. *See* Small Business Reauthorization and Amendments Act of 1997, H.R. 2261, 105th Cong. (as passed by House Sept. 29, 1997); 143 Cong. Rec. 20,662 (1997). Following return of the bill to the Senate, as amended by the House, the Senate reinstated the HUBZone Program by unanimous consent, but without the parity provision. 143 Cong. Rec. at 24,094–108. No explanation for the parity provision's omission was provided in the Senate record. *See id.* at 24,106.

The bill then returned to the House, where the issue of the HUBZone Program's relationship to the 8(a) Program was extensively discussed. *See* 143 Cong. Rec. at 25,747–66 (1997). Representative John J. LaFalce, the Ranking Member on the Committee on Small Business, explained that the Senate had struck the parity provision at the insistence of House members who were worried that the parity provision would have permitted contracts to be taken from the 8(a) Program; in other words, that the provision would have precluded the prioritization of 8(a) awards. Rep. LaFalce stated that "[a]ny proposals which might place [the 8(a)] program in jeopardy naturally cause concern to those Members who place a high priority on the development of minority small business." *Id*. at 25,760 (1997). Rep. LaFalce indicated that although the Senate prevailed in establishing the HUBZone Program, the final bill "confers considerable

discretion on the Administration of the SBA who will implement it." *Id.* (statement of Rep. LaFalce). Indeed, as Rep. LaFalce stated, he resisted the inclusion of the HUBZone Program until he was "specifically prevailed upon by the Small Business Administration," which pledged to him in writing that SBA "will not permit the implementation of the HUBZone's program to negatively affect the 8(a) program." *Id.*[10]

Numerous Representatives who spoke on S. 1139 during the floor debate expressed the same concern—that the new HUBZone Program not harm the existing 8(a) Program. *See* 143 Cong. Rec. at 25,761 (statement of Rep. Velázquez); *id.* (statement of Rep. Talent) ("I yield . . . to say that that is also my understanding, and I have said from the beginning, that I did not want this bill to affect the 8(a) program, and as far as I am concerned, it is out of this bill, it is not mentioned in this bill[.]"); *id.* at 25,762 (statement of Rep. Wynn) (accepting assurances that HUBZone Program would not harm 8(a) Program); *id.* at 25,763 (statement of Rep. Davis) (commending the protection of the 8(a) program); *id.* at 25,764 (statement of Rep. Weygand) ("Continued oversight and vigilance about this HUBZone program is extremely necessary. I know all of my colleagues are looking to Administrator Alvarez to be sure that she does not diminish the 8(a) program and sacrifice monies because of the HUB program. . . . I am concerned that there may be the unintended consequence of negatively impacting minority small businesses and 8(a) firms."); *id.* at 25,765 (statement of Rep. Jackson-Lee) ("we are not disturbing the 8(a) programs"); *id.* at 25,766 (statement of Rep. Mink) (expressing concern about the HUBZone Program's effect on the 8(a) Program and reliance upon SBA's assurances that "that in administering the HUBZone program, they would take steps necessary to assure that 8(a) was not adversely impacted").

---

[10] Indeed, after enactment of the HUBZone Program without inclusion of the explicit parity provision, SBA originally promulgated regulations directing contracting officers to preserve existing 8(a) contracts; then to prioritize small business concerns qualified under both the 8(a) and HUBZone Programs; and then to consider other 8(a) concerns before being directed to set aside a contract for competition restricted to HUBZone businesses. *See HUBZone Empowerment Contracting Program*, 63 Fed. Reg. 31896, 31908 (1998); 13 C.F.R. § 126.607(b) (effective from June 11, 1998 to Aug. 29, 2005). As noted earlier, the regulations were amended in 2005.

Accordingly, the legislative history comports with the conclusion reflected in SBA's regulations that the HUBZone statute need not be read to compel the prioritization of awards under the HUBZone Program over those under the 8(a) and SDVO Programs.[11] Our review of the text, structure and legislative record all support the conclusion that the HUBZone statute may fairly be read to mandate only that contract opportunities set aside for HUBZone concerns be awarded on the basis of restricted competition if the rule of two is met.

## V.

Our conclusion that the SBA's regulations we have reviewed are reasonable is binding on all Executive Branch agencies, notwithstanding any GAO decisions to the contrary.

First, the statute that authorizes the Comptroller General to decide bid protests provides the Comptroller General with the power only to make "recommendations" as to how an Executive Branch agency should resolve bid protests submitted to the Comptroller General. *See* 31 U.S.C. § 3554 (2006); *see also id.* § 3556 (2006) ("This subchapter does not give the Comptroller General exclusive jurisdiction over protests, and nothing contained in this subchapter shall affect the right of any interested party to file a protest with the contracting agency or to file an action in the United States Court of Federal Claims."). Neither that statute nor GAO's regulations implementing it provide GAO with the authority to overrule or invalidate the properly-promulgated regulations of an Executive Branch

---

[11] Since enactment of the HUBZone Program in 1997, Congress has on other occasions considered whether to prescribe the relationship among the small business programs and has not done so. In 2002, Senator John F. Kerry introduced legislation that would have created a priority for small business concerns that were both 8(a) participants and HUBZone concerns. *See* Combined 8(a) and HUBZone Priority Preference Act, S. 1994, 107th Cong. (as introduced, Mar. 6, 2002). In 2003, when the House considered the Veterans Entrepreneurship and Benefits Improvement Act, an early version of the bill would have prioritized the various SBA assistance programs in the order of 8(a), SDVO, and then HUBZone. *See* H.R. 1460, 108th Cong. sec. 3(a), § 37(a)–(b) (as passed by the House, June 24, 2003). After a short debate that did not include any significant discussion of the priority provision, the bill was passed by the House. *See* 108 Cong. Rec. 15,741 (2003). On the Senate side, however, the provision was struck without debate or explanation. *See* Veterans Benefits Act of 2003, Pub. L. No. 108-183, 117 Stat. 2662; 108 Cong. Rec. 29,614–15 (2003).

agency. *See id*. § 3554; 4 C.F.R. § 21.8 (2009) (implementing 31 U.S.C. §§ 3551–3556 (2006)).

Second, the Comptroller General is an officer of the Legislative Branch. *See Bowsher v. Synar*, 478 U.S. 714, 727–32 (1986) (holding Comptroller General is subject to the control of Congress and therefore may not exercise non-legislative power). "Because GAO is part of the Legislative Branch, Executive Branch agencies are not bound by GAO's legal advice." *Whether Appropriations May Be Used for Informational Video News Releases*, 29 Op. O.L.C. 74, 74 (2005) ("Bradbury Memo") (citing *Bowsher*, 478 U.S. at 727–32).

Our Office has on many occasions issued opinions and memoranda concluding that GAO decisions are not binding on Executive Branch agencies and that the opinions of the Attorney General and of this Office are controlling. *See* Bradbury Memo, 29 Op. O.L.C. at 74 ("This memorandum is being distributed to ensure that general counsels of the Executive Branch are aware that the Office of Legal Counsel ('OLC') has interpreted this same appropriations law in a manner contrary to the views of GAO, and to provide a reminder that it is OLC that provides authoritative interpretations of law for the Executive Branch."); Memorandum for Lois J. Schiffer, Assistant Attorney General, Environment and Natural Resources Division and for John D. Leshy, Solicitor, Department of the Interior, from Todd David Peterson, Deputy Assistant Attorney General, *Re: Administrative Settlement of Royalty Determinations* at 6 n.7 (July 28, 1998) ("Although the opinions and legal interpretations of the GAO and the Comptroller General often provide helpful guidance on appropriations matters and related issues, they are not binding upon departments, agencies, or officers of the executive branch."); *Statutory Authority to Contract with the Private Sector for Secure Facilities*, 16 Op. O.L.C. 65, 68 n.8 (1992) ("We note that while GAO reports are often persuasive in resolving legal issues, they, like opinions of the Comptroller General, are not binding on the Executive branch."); Memorandum for Donald B. Ayer, Deputy Attorney General, from J. Michael Luttig, Principal Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Department of Energy Request to Use the Judgment Fund for Settlement of Fernald Litigation* at 8 (Dec. 18, 1989) ("This Office has never regarded the legal opinions of the Comptroller General as binding upon the Executive."); Memorandum for Joe D. Whitley, Acting Associate Attorney General,

from William P. Barr, Assistant Attorney General, Office of Legal Counsel, *Re: Detail of Judge Advocate General Corps Personnel to the United States Attorney's Office for the District of Columbia and the Requirements of the Economy Act (31 U.S.C. §§ 1301, 1535)* at 2 n.2 (June 27, 1989) ("The Comptroller General is an officer of the legislative branch, and historically, the executive branch has not considered itself bound by the Comptroller General's legal opinions if they conflict with the opinions of the Attorney General and the Office of Legal Counsel." (internal citation omitted)).

## VI.

We accordingly conclude that SBA's regulations regarding the relationship among the 8(a), HUBZone, and SDVO Programs constitute a permissible construction of the Act.

JEANNIE S. RHEE
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
